### R. J. SAUNDERS & CO., INC. *v.* UNITED STATES

No. 7973.— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Entry No. 739231.

(Decided March 20, 1951)

*Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement of certain bentwood chairs exported from Czechoslovakia in August 1937, the merchandise being described on the consular invoice as "Bentwood-chairs, without hardware," the item involved being No. 188E, covering 200 chairs further described as "maple A/empty." The word "empty," according to the record, signifies that no seats were included.

The invoice price was $12.70 per dozen, f. o. b. Hamburg, Germany, and the merchandise was entered at that value less the invoiced cost of delivery from the factory in Czechoslovakia to Hamburg. Appraisement of the item involved is stated on the invoice as follows: "#188E— 200 chairs @ 33.83 Cz. Crowns ea. net (cost of production)."

Counsel have stipulated that there was no foreign, export, or United States value for such or similar merchandise on the date of exportation, and that cost of production, which is defined in section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)), is the proper basis of value for the merchandise in question.

The evidence as to the elements of cost of production offered on behalf of the plaintiff consists of the affidavit of one Václav Resl, who at the time of exportation was the managing director of the Tatra

Bentwood Furniture Works at Turc. Sv. Martin, Czechoslovakia, the manufacturer and exporter of the chairs in question. The affidavit was received in evidence as exhibit 1 over objections of counsel for the defendant as to its relevancy and materiality.

For the defendant there were offered and received in evidence as exhibits 2 and 3 two reports, dated March 11 and September 12, 1938, respectively, of United States Treasury representatives concerning investigations made at the premises of the manufacturer and exporter in Czechoslovakia.

The affidavit, exhibit 1, was executed January 7, 1949, before the American vice consul in Prague. Therein the affiant states that he "was personally familiar with the methods of production, costs, sales, distribution and selling prices of the Bentwood furniture manufactured and sold by Tatra," and also with the merchandise sold to the importer herein, and particularly with the shipment here involved and its cost of production.

The affidavit then continues:

That the cost of production per 1 piece, expressed in Czechoslovakian Krowns, for the 188E Empty (without veneer seat) chair hereinbefore referred to was as follows:

| | | |
|---|---|---|
| (1) | Cost of materials, fabrication, labor, manipulation employed in manufacturing or producing_____ Kronen | 16. 72 |
| (2) | Usual general expenses—120%_____ | 10. 80 |
| (3) | Cost of containers and coverings and all other costs, charges and expenses incidental to placing the merchandise in condition, packed, ready for export to the United States_____ | 1. 88 |
| | | 28. 80 |
| (4) | Profits—5%_____ | 1. 44 |
| | Total cost for 1 chair fob. Hbg._____ | 30. 24 |

That the cost of material and labor expressed in (1) was the cost prevailing at a period prior to the date of shipment which ordinarily would permit such manufacture or production.

That the general expenses expressed under (2) were those for the same period and also represented our prevailing general expenses for the whole of 1937. However, the item of general expenses as set forth in (2) includes cost of transportation from the factory to Hamburg, Germany, amounting to Cz. kr. 1.38 per 1 chair.

That the cost of containers, coverings and other packing costs expressed in (3) represent such actual cost for the shipment referred to.

That the profit expressed in (4) is equal to the profit that was ordinarily added by the Tatra Bentwood Furniture Works in 1938 in the sale of Bentwood furniture. It bears no relation to the profit that was added on the sale of furniture other than Bentwood furniture.

From the information available to me the profit added by Tatra in the sale of Bentwood furniture was equal to the profit ordinarily added by other producers of Bentwood furniture in Czechoslovakia.

In the brief filed on behalf of the plaintiff by its counsel it is contended that the item of transportation from the factory in Czechoslovakia to Hamburg, Germany, amounting to Cz. Kc. 1.38, is not part of the cost of production and should be deducted from the amount of general expenses set forth in exhibit 1, and that the amount of profit to be added in calculating the cost of production should be the statutory minimum of 8 per cent of the cost of materials and labor and general expenses.

These contentions are vigorously opposed by the defendant. With respect to the transportation item, it is argued in the brief filed by defendant's counsel that since the price at which the merchandise was sold included the freight charges from the factory to Hamburg, and since the said charge was recouped from the buyer and was actually considered and included in the selling price, it was a necessary and usual item of general expense, and the case of *United States* v. *Zellerbach Paper Co.*, 28 C. C. P. A. (Customs) 303, C. A. D. 159, is cited in support of this argument.

The *Zellerbach* case involved a situation whereby the manufacturer of merchandise sold in Germany for home consumption paid the freight from the factory to the place where the buyer was located in all instances, the price quoted to every purchaser (no matter where located) being the same for the same quantity of merchandise, payment of the freight being implicitly included in the *per se* price. It was there held that since there was but one price at which such or similar merchandise was freely offered to all purchasers in Germany, which price included freight to point of destination in Germany, the inland freight from the factory to the port of exportation was a part of the foreign value of the imported merchandise.

That case turned upon the question of the price at which the goods were freely offered for sale in accordance with the requirements of the statute, and it was pointed out by the court that since the price of the goods was the same in all the markets of Germany, there was no question of which were the "principal markets," all purchasers for home consumption being treated alike.

There is no showing here that a similar condition existed, i. e., that the manufacturer and exporter paid the freight to inland destination in all instances and that the price was the same no matter what the destination was. As a matter of fact, the inland destination in this case, Hamburg, Germany, was not within the country of exportation, but was obviously the most convenient port of shipment for the overseas portion of the journey of exportation of the goods.

Each of the bases of value set forth in section 402, i. e., foreign value, export value, United States value, and American selling price, *but not including cost of production*, is tied to such value in the "principal market" or the "principal markets," as the case may be, of

either the country of exportation or of the United States. The cost of production formula, however, is silent as to the place at which the value represented thereby is to be determined, but it can hardly be doubted that its purpose is to ascertain a value for merchandise in the country of manufacture or production, and this must particularly be true when, as here, the country of manufacture or production is also the country of exportation. This being so, the charge for freight from the country of exportation, Czechoslovakia, to another country is not properly a part of the cost of production under the statutory formula.

The remaining item in question is that of profit. Mr. Resl, the affiant in exhibit 1, states that the 5 per cent profit he used in his calculation of cost of production was "equal to the profit that was ordinarily added" by the manufacturer and exporter "in 1938 in the sale of Bentwood furniture," and that "from the information available" to him the said profit "was equal to the profit ordinarily added by other producers of Bentwood furniture in Czechoslovakia." It will be noted that the merchandise here involved was exported in August of 1937, and there is no showing that the profit situation which existed in 1938 was the same as that which existed at or about the time of exportation in 1937. On the contrary, the Treasury representative's report, exhibit 2, indicates that the profit of the particular manufacturer and exporter was considerably higher in the year 1937 than the profit which Mr. Resl has indicated for the year 1938.

As the situation stands, it appears that the appraiser improperly included in the appraised value an item for freight from the factory in Czechoslovakia to the port of shipment, Hamburg, Germany, and to that extent the appraised value must be held to be erroneous. On the other hand, the plaintiff has failed to establish at least one of the statutory elements of cost of production, i. e., the profit to be added, and so has not met the burden of establishing the correct value of the merchandise.

There is nothing in the record to indicate the exact amount per chair which the appraiser included in the appraised value as representing freight from the factory to Hamburg. The affiant in exhibit 1 states the amount of such freight to be Cz. Kc. 1.38 per chair. This figure is disputed in the brief filed on behalf of the defendant as being too low. However, the argument on behalf of the defendant in this regard is based upon a calculation of the freight charge which was actually incurred in connection with the shipment here involved, which included other types of chairs not covered by this appeal for reappraisement. The Treasury representative's report, exhibit 3, indicates that the freight costs varied, depending upon the size and weight of the item involved, so that it would be impossible to determine from the

total freight charge for the instant shipment how much should be assigned to the 200 type 188E chairs here involved. Under the circumstances, the direct evidence found in the affidavit, exhibit 1, will be accepted as correct.

Upon the entire record I find as facts:

(1) That the involved merchandise consists of bentwood chairs exported from Czechoslovakia in August 1937, being particularly described on the invoice as "188E, 200 chairs maple A/empty."

(2) That at the time of exportation neither such nor similar merchandise was freely offered for sale in the principal markets of either the country of exportation or the United States.

(3) That the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind

is the appraised value less Cz. Kc. 1.38, or Cz. Kc. 32.45 net, each·

I conclude as matters of law:

(1) That the proper basis for the determination of the value of the bentwood chairs in issue is cost of production as defined in section 402 (f) of the Tariff Act of 1930, and

(2) That the said cost of production is as set forth in finding of fact (3) above.

Judgment will issue accordingly.