(Reap. Dec. 9092)

C. J. Tower & Sons v. United States

Entry No. 3445, etc.

(Decided February 28, 1958)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

MOLLISON, Judge: The 174 appeals for reappraisement enumerated in the schedule attached to this decision were consolidated for the purpose of trial. They relate to shipments of rubber-tipped bobby pins, exported from Canada between March 1952 and December 1954 and imported through the port of Niagara Falls, N. Y.

The parties have agreed that there was no foreign value applicable to the merchandise at bar. The term "foreign value" is defined in section 402 (c) of the Tariff Act of 1930, as amended. There is no dispute that the merchandise was appraised on the basis of export value, which term is defined in section 402 (d) of the said act.

It is the contention of the plaintiff that, at the times of exportation of the instant merchandise, there existed no export value or United States value, within the meaning of such terms, as defined in section 402, *supra*, and that the proper basis for determining the value of the involved bobby pins was cost of production, as defined in section 402 (f) of the said act.

At the times of importation here involved, "export value" was defined in section 402 (d) of the Tariff Act of 1930 as follows:

The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiff contends that no export value for "such" merchandise existed for the reason that such rubber-tipped bobby pins were not freely offered or sold in Canada to all purchasers for exportation to the United States. As establishing this contention, plaintiff relies on evidence in the record to the effect that the Canadian manufacturer of the involved bobby pins sold only to selected purchasers. The class of trade to which such bobby pins were offered by the Canadian manufacturer and exporter consisted of wholesalers of such items, and variety and drug chain stores. No offers or sales were made to individual, as distinguished from chain, retailers.

The United States was divided into eight territorial districts and only one wholesaler in each district was selected and permitted to buy such bobby pins from the manufacturer. Each wholesaler was confined to reselling in his own territory and could not resell to variety and drug chain stores. Offers were not made by the Canadian manufacturer and exporter to all chain stores, but were confined to certain

selected ones. The manufacturer did not license other Canadian manufacturers to make identical rubber-tipped bobby pins.

The record supports the foregoing summation of the evidence on the point, and establishes, in the opinion of the writer, that there was a limitation of offer for sale of such merchandise in that it was not offered to all purchasers within the meaning of the statute. It follows that no export value based upon the value of "such" merchandise existed within the meaning of the statute.

On the question of whether merchandise similar to that here involved was freely offered for sale for exportation to the United States at or about the times of exportation of the merchandise here in question, plaintiff contends that inasmuch as the rubber-tipped bobby pins were patented in Canada and the United States by the manufacturer of the instant merchandise, and as no other manufacturer in Canada made rubber-tipped bobby pins, there was no "similar merchandise," within the meaning of that term as used in the export value statute, offered for sale in Canada, and, consequently, no export value based upon the value of similar merchandise existed.

In the brief filed in its behalf, counsel for the defendant urges that all bobby pins are "similar" to each other, whether rubber-tipped or not, and cites the decision of our appellate court in the case of *United States* v. *International Forwarding Co., Inc., a/c Ozalid Corporation*, 27 C. C. P. A. (Customs) 21, C. A. D. 56, as supporting the following statement by counsel:

* * * The Court of Customs and Patent Appeals in reversing the lower court stated that in order to establish a foreign value, proof must be offered of sales of such or *similar* merchandise by *other* manufacturers in the foreign country, even though the involved merchandise was a patented article. * * * [Italics quoted.]

I have carefully examined not only the decision of our appellate court in the above-entitled case, but also the decisions of the third division of this court in the matter, reported in 73 Treas. Dec. 1502, Reap. Dec. 4292, and of the single judge sitting in reappraisement, reported in 72 Treas. Dec. 1163, Reap. Dec. 4158, and in none of them is it indicated that the merchandise there involved was a *patented* article, and in none of them do the courts refer to patented articles. What is indicated is that the merchandise there involved was a *trade-marked* article, the implications of which are vastly different from those in the case of *patented* articles. The former implies a specific source or origin of an article, which article may be the same as or similar to articles emanating from other sources or origins, while the latter implies a novelty in the particular article which differentiates it from other articles, even those of the same character.

The *International Forwarding Co., Inc.*, case, therefore, does not stand for the holding which counsel for the defendant has ascribed to it.

The evidence on the subject of the nature of the bobby pins involved is expressed in the following portion of the record (Tr. pp. 17–18):

Q. Referring to the merchandise involved in this case, was it a particular kind of bobby pin?—A. This was a rubber-tipped bobby pin.

Q. Will you explain to the court the significance of the statement "rubber tipped"?—A. Well, prior to the invention, which I hold a patent on this, the bobby pin was chopped off in a machine and there was a burr left on the end. I'd say 99 times out of 100 a woman would hold her hair in her hand and open the bobby pin with her teeth, thereby putting a notch in her tooth which was called by the dentists as "bobby pin notch teeth." And in order to avoid that, why, I designed a different type of bobby pin, or a bobby pin and put a rubber coating or similar coating on it to avoid getting the teeth notched.

Q. You say that you hold the patent on that rubber-tipped bobby pin?— A. I have the United States, Great Britain, and Canada patent.

The very fact that the involved bobby pin was the subject of patents issued to the inventor establishes that it possessed elements of invention, novelty, and utility, which distinguished it from other bobby pins not possessing the patented features. Whether or not that fact alone would bar a finding that other bobby pins were similar thereto is, however, unnecessary to determine, inasmuch as it clearly appears that, in at least two of the many factors which may be considered as criteria of similarity for tariff purposes, to wit, materials and use (*Meadows, Wye & Co. (Inc.) et al.* v. *United States,* 17 C. C. P. A. (Customs) 36, T. D. 43324), the involved bobby pins differed from ordinary bobby pins to such an extent as to establish that they are not "similar merchandise" within the meaning of that term as used in the valuation statute. Accordingly, I find that no export value for merchandise similar to that at bar existed within the definition of export value as given in the statute.

In the matter of United States value, the writer finds that no United States value for such merchandise existed, for the reasons, as shown by the record, that wholesalers in the United States who bought from the Canadian manufacturer were limited to reselling only within certain territorial confines and were barred from selling to national chain stores or to sectional chain stores having head offices outside each wholesaler's territory. Under such circumstances, there could consequently be no free offer to all purchasers in the United States principal market, as required by the statute.

As to the United States value for similar merchandise, it would appear that the same considerations which bar a holding of export value for similar merchandise obtain with respect to United States value. I, accordingly, find that no United States value for similar merchandise existed.

Under the statutory scheme of valuation, section 402 (a), (1), (2), and (3), the proper basis for determining the value of the merchandise at bar is, therefore, cost of production, which, at the times here pertinent, was defined in section 402 (f) of the Tariff Act of

1930.[1]  The evidence offered by the parties on this subject consists of the oral testimony of the president of the Canadian manufacturer and exporter, offered on behalf of the plaintiff, and the report of a Treasury representative concerning an investigation he made at the Canadian factory.

The latter was received in evidence as defendant's exhibit A, subject to reserved ruling upon objection to its admission and a motion made by counsel for the plaintiff to strike out all matter concerning profit-and-loss statements of the Canadian manufacturer for the years ending December 31, 1952, and 1953, reported by the Treasury representative in his report.  The ground for objection and the motion is stated to be that such statements are immaterial in the determination of cost of production under the statute.

Preliminary to disposing of the objection and motion to strike, it should be noted that as the evidence on the subject of cost of production was developed by both sides, it appears that there is no serious or substantial dispute between the parties as to the facts with respect to the elements of cost of production covered by subdivisions (1) and (3) of section 402 (f), that is to say, the costs of materials, and of fabrication, involved in the production of such or similar merchandise, and the container and packing charges in connection therewith.  Insofar as defendant's exhibit A sets forth the figures with respect to such items, it tends to corroborate the evidence offered on behalf of the plaintiff.  In fact, insofar as minor differences exist, it appears that the figures supplied by the plaintiff are higher than those given in the report.

The dispute actually centers about the usual general expenses covered by subdivision (2) of the statute, and the addition for profit covered by subdivision (4).  In essence, the plaintiff contends that only those items of general expense involved in producing the merchandise, i. e., in connection with the operation of the Canadian factory and office, should be included in the item of usual general

---

[1] SEC. 402.  VALUE.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(f)  COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1)  The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2)  The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3)  The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4)  An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

expenses, while the defendant contends that there should be included, in addition thereto, all other items of general expenses, i. e., selling expenses, paid by the manufacturer.

At this point, the writer deems it proper to dispose of the objections made by counsel for the plaintiff to the admission into evidence of those portions of the Treasury representative's report, defendant's exhibit A, relating to profit-and-loss statements. The writer deems the objection on the ground of immateriality to be without merit on two bases: First, the evidence offered by the plaintiff with respect to the item of profit relates to the profit actually made by the particular manufacturer here involved. Consequently, profit-and-loss statements emanating from that manufacturer have probative value as to the material fact at issue with respect to the profits actually made by that manufacturer. Secondly, the profit-and-loss statements itemize the elements of factory and office general expenses on the one hand, and of selling expenses on the other, which relate to the disputed item of usual general expenses. The itemization of such expenses in the profit-and-loss statements tends to corroborate the itemization given orally by plaintiff's witness, and the evidence does have probative value in connection with those material facts. The objection made by counsel for the plaintiff is, accordingly, overruled and the motion to strike denied.

There are four items of expense, denominated "selling expenses," in dispute. These are:

Freight from Canada to the United States and shipping expenses in the United States (including customs clearance but not duty charges)
Traveling expenses
Advertising expenses
Commissions paid

It would seem to be clear that the freight and shipping costs incurred in sending the bobby pins from the factory in the market in Canada to the places of business in the United States of the American wholesale distributors or chain stores are not properly a part of cost of production. *R. J. Saunders & Co., Inc.* v. *United States*, 26 Cust. Ct. 578, Reap. Dec. 7973.

The record shows that the item for traveling expenses relates to those incurred by the president of the Canadian manufacturer while in the United States in connection with the business of selling bobby pins. Although not so stated in the record, it seems likely that such expenses were incurred in the effort to sell the pins to customers of his firm, i. e., the American wholesale distributors and chain stores, and it would seem that such an item would properly be part of the "expenses of doing business," as the term "usual general expenses" has been characterized by our appellate court in the case of *United*

*States* v. *Alfred Dunhill of London, Inc.*, 32 C. C. P. A. (Customs) 187, C. A. D. 305, and, as such, properly a part of the cost of production contemplated by the statute.

The advertising expenses are stated to have been incurred in advertising in eight different American magazines, such as Cosmopolitan, Good Housekeeping, etc. Quite obviously, this item was in relation to sales to the American buying public, rather than in relation to sales to the manufacturer's primary customers, who were the American wholesale distributors and chain stores. It would seem to be an item of expense which the Canadian manufacturer undertook to pay, and probably was taken into consideration in fixing his price to his customers. In other words, if the customers had borne the expense of advertising, the price to them would presumably have been lower. I am of the opinion that secondary advertising, such as the item here involved seems to be, is not properly a part of the cost of production under the statute. Primary advertising, i. e., that undertaken by the manufacturer to induce purchases by his primary customers, would be part of the usual general expenses, as the term is defined in the *Dunhill* case, *supra*, at page 189.

The situation as to the item of commissions is one which is not made clear by the record. The eight American wholesale distributors to whom the bobby pins were offered were denominated by the plaintiff's witness as "purchasers" and the sales they effected to American retailers as "resales," indicating a buyer and seller relationship between the Canadian manufacturer and the American wholesalers. At various points in the record, however, they were described as "salesmen" and as "agents," indicating a principal and agent relationship. In the view of the writer, there is not sufficient clarification of the nature of the item of commissions to permit an intelligent determination of whether it is or is not part of the statutory cost of production.

The foregoing observations with respect to the four disputed items of expenses show that two of them, freight and shipping charges and advertising expenses, are not part of the statutory cost of production; one, traveling expenses, is clearly part of such cost of production, and as to one, commissions, the state of the record does not permit a determination.

The amounts representing the four disputed items were given in evidence by plaintiff's witness in a lump sum for each type of merchandise involved, and no breakdown showing how much of such lump sums was attributable to any of the items is available. At page 45 of the stenographic transcript, plaintiff's witness testified as follows:

Q. Can you break that item down in any way into individual components?—
A. No, all I can say it would be for commissions, traveling, shipping, and advertising.

and, at page 46:

Q. Can you give us any idea as to the respective percentages applicable to these four subdivisions to which you have just testified?—A. No, sir.

Q. You cannot?—A. No, sir.

To recapitulate, the situation is as follows: It has been established by the record that the proper basis of value of the merchandise here involved is cost of production. The plaintiff and defendant have offered evidence as to the elements of cost of production, and, as to one of such elements, to wit, usual general expenses, the evidence shows that general expenses are divided into three subdivisions—factory, office, and selling expenses. There is no dispute as to the propriety of the inclusion in usual general expenses of the amounts shown with respect to factory and office general expenses, but there is dispute as to the correctness of the inclusion in the cost of production of the items under the subdivision of "selling expenses." The plaintiff contends that none of such items is includable, while the defendant contends that all of such items are includable.

Examination of the evidence with respect to the nature of the items under the subdivision of "selling expenses," i. e., freight, travel, advertising, and commissions, indicates that one, and possibly two, of such items are not properly includable in the usual general expenses contemplated by the statute, one is definitely includable, and the remaining item may or may not be includable, a definite decision being impossible on the present state of the record.

The only evidence in the record as to the amount of selling expenses is given in lump-sum figures—not broken down into the items involved.

Under the circumstances, the writer is of the opinion that, inasmuch as the plaintiff is the party contending for cost-of-production value and offered the lump-sum figures as to selling expenses, and inasmuch as the plaintiff obviously is the party who might be expected to have in its possession the information as to the portions of the lump-sum figures properly attributable to the various items of selling expenses, and the record shows that plaintiff's witness was unable to give that information, it must be held that the only substantial evidence before the court with respect to the amount of usual general expenses is the amount shown in the record for factory, office, and selling expenses, i. e., including the lump-sum figures for selling expenses.

Such evidence is apparently the most satisfactory evidence which is available on the issue of the usual general expenses in connection with merchandise such as or similar to that in the case at bar and its acceptance as proof of the usual general expenses comports with the—

* * * elementary principle of the law of evidence that the best evidence of which the case in its nature is susceptible and which is within the power of the party to produce, or is capable of being produced, must always be adduced in proof of every disputed fact.   [20 Am. Jur., Evidence § 403.]

While not on all fours with the present case, the situation which obtained in the case of *United States* v. *Jovita Perez*, 36 C. C. P. A. (Customs) 114, C. A. D. 407, has some elements of similarity in that, in the cited case, certain figures used therein for the purpose of computing the profit factor of the cost-of-production formula were based upon assumptions, rather than known facts, as to what the value for duty purposes and what the duty assessed would be.   They were obviously accepted as representing the most satisfactory evidence which was within the power of the parties to produce, being the only substantial evidence in the record as to cost of production and the profit usually added, and it is in like fashion that the lump-sum figures here offered must be accepted as the only substantial evidence in the record with respect to the usual general expenses applicable to the merchandise at bar.

As to the item of profit, the evidence offered on behalf of the plaintiff establishes that it was impossible to obtain evidence upon the basis of which there might be ascertained the profit added, in the case of merchandise of the same general character as the bobby pins at bar, by manufacturers in Canada who were engaged in the manufacture of merchandise of the same class or kind.   Under the law applicable to such situations (see *United States* v. *Jovita Perez, supra*, and case cited therein), the actual profit of the manufacturer of the involved merchandise may be considered in determining the allowance to be made for profit.

The evidence offered by both the plaintiff and the defendant shows that the profit realized by the particular manufacturer was less than the statutory minimum of 8 per centum of the sum of the amounts found for the cost of materials and fabrication and usual general expenses, and it follows that the statutory minimum must be added in each case.

A summation of the record evidence with respect to the amounts of the elements of cost of production, as defined by the statute, section 402 (f), *supra*, applicable to the merchandise exported in the years 1952 and 1953, and up to November 1954, is as follows:

Section 402 (f), paragraph

| Item No. | (1) Materials and fabrication | (2) Usual general expenses: | | | | Sum of (1) and (2) | (3) Packing | (4) Profit | Cost of production |
| | | Factory | Office | Selling | Total | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 18 | Can. $2.37 | $0.72 | $0.36 | $1.20 | $2.28 | $4.65 | $0.18 | $0.37 | Can. $5.20 |
| 24 | 2.40 | 0.75 | 0.33 | 1.20 | 2.28 | 4.68 | 0.18 | 0.37 | 5.23 |
| 54 | 6.72 | 2.25 | 0.92 | 3.60 | 6.77 | 13.49 | 0.18 | 1.08 | 14.75 |
| 72 | 6.82 | 2.25 | 0.93 | 3.60 | 6.78 | 13.60 | 0.20 | 1.09 | 14.89 |

The record shows that, beginning in November 1954, there was an increase in cost of materials amounting to 3 cents per gross of cards of the finished product, but that there was no change in the other cost-of-production factors.  Consequently, the cost of production applicable to the merchandise exported during and after November 1954 was 3 cents more than is indicated in the last column above, and was as follows:

| Items No. | Cost of production |
|---|---|
| 18 | Can. $5. 23 |
| 24 | 5. 26 |
| 54 | 14. 78 |
| 72 | 14. 91 |

On the entire record presented, I find as facts:

(1) That the merchandise involved herein consists of rubber-tipped bobby pins of patented construction, imported from Canada during the years 1952, 1953, and 1954.

(2) That at or about the times of exportation involved herein neither such nor similar merchandise was freely offered for sale to all purchasers for home consumption in Canada or for exportation to the United States.

(3) That at or about the times of exportation involved herein neither such nor similar merchandise was freely offered for sale to all purchasers in the principal market of the United States.

(4) That at or about the times of exportation involved herein the elements of cost of production applicable to the involved merchandise were as shown in the summation set forth above.

I conclude as matters of law:

(1) That the proper basis of value for the merchandise at bar is cost of production, as defined in section 402 (f), Tariff Act of 1930, and

(2) That such cost of production for each of the items involved is as follows:

| | Merchandise Exported | |
|---|---|---|
| Item No. | Prior to Nov. 1954 | After Nov. 1954 |
| 18 | Can. $5. 20 | Can. $5. 23 |
| 24 | 5. 23 | 5. 26 |
| 54 | 14. 75 | 14. 78 |
| 72 | 14. 89 | 14. 91 |