(Reap. Dec. 9579)

C. J. TOWER & SONS v. UNITED STATES

Entry No. 3445, etc.

(Decided on rehearing [Reap. Dec. 9092] January 11, 1960)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector* and *Richard H. Welsh*, trial attorneys), for the defendant.

MOLLISON, Judge: These cases are before me on rehearing, granted upon timely motion made by counsel for the plaintiff after decision was rendered by me, which is reported in *C. J. Tower & Sons* v. *United States*, 40 Cust. Ct. 719, Reap. Dec. 9092.

In the above-cited decision, I concluded that the proper basis of value for the involved rubber-tipped bobby pins was cost of production, as defined in section 402(f), Tariff Act of 1930, and that the cost of production for the various items involved, i.e., Nos. 18, 24, 54, and 72, included a lump-sum figure in each instance for certain expenses denominated "selling expenses," although it appeared that certain of the individual expenses included in the lump-sum figures were not properly part of the statutory cost of production. I incorporate by reference my opinion in the cited report as though herein fully set out.

Although the rehearing granted was not limited to the production of further evidence with respect to the disputed items of selling expenses, when the cases were called for trial, plaintiff offered evidence only as to the nature and amount of the disputed items of selling expense, and no evidence was offered on behalf of the defendant.

As the case comes before me now, it appears that plaintiff maintains its original position that the evidence shows that none of the disputed

items is properly includable in the statutory cost of production of the involved merchandise, although it asserts that it has established the breakdown of the lump-sum figure in the event that it should be determined that one or some of the items are properly so includable. Defendant also maintains its original position that the proper basis of value for the merchandise is export value, defined in section 402(d) of the Tariff Act of 1930, and that such value is the appraised value in each case. In the alternative, defendant asserts that the record evidence is insufficient upon which a finding of the statutory cost of production of the involved merchandise can be made.

Inasmuch as no new evidence was offered with respect to the basis of value applicable to the merchandise at bar, I adhere to the views taken by me upon the original decision on that point, and will restate the findings and conclusion thereon at the end of this opinion.

The first question which I find to be posed by the record as now constituted is, which, if any, of the items of selling expenses in dispute between the parties is properly includable in cost of production? The disputed items are: Freight and shipping, advertising, traveling expenses, and commissions.

It is clear that the item of freight and shipping covered the cost of bringing the involved merchandise from the place in Toronto, Ontario, where it was manufactured, to the place in the United States, where it was delivered to the purchaser, including expenses of customs clearance but not duty charges. In my original opinion, reported in Reap. Dec. 9092, I cited the case of *R. J. Saunders & Co., Inc.* v. *United States*, 26 Cust. Ct. 578, Reap. Dec. 7973, as authority for holding that costs for freight and shipping in countries other than the country of manufacture or production are not contemplated by the cost of production formula in section 402(f), *supra*.

In that case, it was said *inter alia*:

Each of the bases of value set forth in section 402, i.e., foreign value, export value, United States value, and American selling price, *but not including cost of production*, is tied to such value in the "principal market" or the "principal markets," as the case may be, of either the country of exportation or of the United States. The cost of production formula, however, is silent as to the place at which the value represented thereby is to be determined, but it can hardly be doubted that its purpose is to ascertain a value for merchandise in the country of manufacture or production, and this must particularly be true when, as here, the country of manufacture or production is also the country of exportation. This being so, the charge for freight from the country of exportation, Czechoslovakia, to another country is not properly a part of the cost of production under the statutory formula.

Counsel for the defendant has not sought to discuss or distinguish the *Saunders* case, *supra*, but instead has cited the case of *United States* v. *Paul A. Straub Co., Inc.*, 41 C.C.P.A. (Customs) 209, C.A.D. 553, as holding that—

\* \* \* when sales are made F.O.B. point of destination at a certain price, and such price includes charges up to that point, the said charges become an integral part of the unit value.

I am of the opinion that counsel has unwittingly extended the holding of the *Straub* case beyond the point intended by the learned court which rendered the opinion in that case. The court, in the *Straub* case, merely held that where merchandise is offered and sold only on an f.o.b. port of exportation *in the country of exportation* basis, the f.o.b. charges are part of the statutory foreign or export value of the merchandise. It did not hold that that rule obtained when delivery took place *outside* of the country of exportation, and, indeed, in its opinion in the *Straub* case, our appellate court cited and quoted with approval a decision of a judge of this court sitting in reappraisement, to wit, the decision in the case of *John A. Steer & Co.* v. *United States*, 30 Cust. Ct. 504, Reap. Dec. 8196, holding that, notwithstanding certain merchandise was always offered and sold in Finland on a c.i.f. American port basis, no freight or shipping costs after delivery to the port of exportation in Finland were properly part of the value upon which duty was to be taken.

Counsel for the defendant further cites the decision of our appellate court in the case of *United States* v. *Alfred Dunhill of London, Inc.*, 32 C.C.P.A. (Customs) 187, C.A.D. 305, at page 189, as authority for including "costs of delivery" in the cost of production. In my view, the costs of delivery therein referred to are the costs of delivery in the country of manufacture, production, or exportation, and not the costs of delivery in the United States.

I am consequently of the opinion that the item of freight and shipping in this case, being the costs for such expenses after manufacture or production in Toronto, Canada, are not properly part of the statutory cost of production.

The item of expense for advertising is shown to relate to advertising, paid for by the manufacturer, but directed toward the ultimate consumer purchasers in the United States—in other words, advertising directed toward the manufacturer's purchaser's customers. Again, the *Dunhill* case, *supra*, is cited by counsel for the defendant as requiring the inclusion in the "usual general expenses" element of statutory cost of production of "all \* \* \* advertising." I can only reiterate my view, stated in my original opinion, in Reap. Dec. 9092, that it would seem that the advertising referred to in the *Dunhill* case is that advertising, paid for by the manufacturer, designed to effect sales by the manufacturer to *his* primary customers. Advertising, although paid for by the manufacturer, designed to effect sales at a level below that of the manufacturer, it seems to me, is not part of the cost of producing and selling the goods in the first instance,

which, in my view, is the situation which the cost of production statute is designed to cover.

Accordingly, I adhere to the position taken by me in my original opinion, that the cost of advertising involved in this case, shown to be directed toward individual consumer purchasers in the United States, is not properly part of the statutory cost of production.

The item of traveling expenses is shown to be the costs incurred by the president of the manufacturing company while in the United States in connection with the business of selling bobby pins such as those here involved. The item of commissions is shown to be the commissions paid by the manufacturer to salesmen who sold his bobby pins to his American primary purchasers. Counsel for the plaintiff argues that these expenses should form no part of the cost of production, inasmuch as they were incurred outside of Canada, the country of production.

To begin with, the mere fact that an item of expense was not incurred in the country of manufacture, production, or exportation is no reason, standing alone, for not including it in the statutory cost of production. If, in fact, it is an element of expense incurred in the production and offer for sale of goods such as or similar to those under appraisement, it is includable as part of the statutory cost of production. Compare *Ford Motor Company* v. *United States*, 29 Cust. Ct. 553, A.R.D. 9, involving the status of American-made patterns furnished to the foreign manufacturer without cost and used in the production abroad of automobile exhaust manifolds subsequently imported into the United States. See also *Lionel Trading Co., Inc.* v. *United States, infra.*

Secondly, since the determination of the cost of production is an effort to arrive at a substitute for foreign market value (*Lionel Trading Co., Inc.* v. *United States*, 24 C.C.P.A. (Customs) 432, T.D. 48900), and the latter value contemplates the value of goods as *offered for sale*, the expenses of offering the goods for sale, including traveling expenses in connection with the sale, advertising, and selling commissions paid by the manufacturer or producer, are properly part of the usual general expenses in connection with such merchandise within the meaning of the cost of production statute. I am of the opinion that when the items of traveling expenses, advertising, and commissions were included in the list of exemplars named by our appellate court in the *Dunhill* case, *supra*, as parts of the "usual general expenses," it was with reference to such named items as were incurred in connection with the *production and offer for sale* in the first instance of goods such as or similar to those under appraisement. Into this category fall the items of traveling expenses and commissions involved in the cases at bar, although. for the reasons herein-

before expressed, I do not believe that the advertising expenses shown to have been incurred by the manufacturer in this case are those contemplated by the statute.

To recapitulate, I conclude that the items of freight and shipping and advertising paid in connection with merchandise such as that in the case at bar are not includable in the usual general expenses contemplated by the cost of production statute, while the items of traveling expenses and commissions I conclude are properly part of such usual general expenses.

The next question for determination is whether the plaintiff has offered sufficient evidence upon which a finding as to the amounts of the items of traveling expenses and commissions may be determined by the court. The evidence on the point consists of the oral testimony of the president of the manufacturing company. His testimony is to the effect that after the original decision in this case was rendered he was requested by the attorney for the plaintiff to ascertain the cost of the various items entering into the lump-sum figure he had previously given under the item of "selling expenses."

He made a breakdown of the expenses with the use of books, records, and invoices kept in his office under his supervision. It appeared that the books and records, which he stated contained the "basic sales figures," were still in existence at the time he gave his testimony, but that, after using the invoices to break those figures down, he destroyed the invoices since "We don't have to keep invoices. We have to keep our records."

Both at the trial and in the brief filed on behalf of the defendant the admission of the witness' testimony as to the results of his breakdown of the figures obtained by him from his books, records, and invoices was objected to on the ground that the admission of such evidence violated the best evidence rule of the law of evidence.

As Jones, in his work on The Law of Evidence in Civil Cases, 4th edition, volume 1, chapter VII, section 199, puts it the rule is that—

It is the universal rule that the best evidence that is obtainable in the circumstances of the case must be adduced to prove any disputed fact.

and the rule is undoubtedly designed to require the production of the most satisfactory evidence which is available and to prevent the errors or fraud which might follow upon the proof of writings by oral testimony.

It appears that in the case at hand the method used by the witness of obtaining the breakdown of the lump-sum figure was to determine, with the use of the invoices, how many gross of the product were shipped and divide that figure into the amount of the item of expense as shown by his books and records. This method was used as to the items of freight and shipping, advertising, and traveling expenses, but the item of commissions was "reflected right in the books."

It also appeared that the same results could have been obtained "by going through the books and substantiating the amount of sales to each account, and deducting"—in other words, it appears that the destroyed invoices were actually not necessary nor the only means by which the required breakdown could be obtained.

According to the witness, the books were still available, but could not be taken out of Canada because of Canadian law on the subject. It appears that the books had been made available on the occasion of a visit by an agent of the Treasury Department, and were available in Canada at the time of trial. Nevertheless, and in the light of these facts, the Government made no effort to seek an adjournment or continuance of the trial for the purpose of securing the inspection of the books and verification of the facts testified to by the witness.

Moreover, there is nothing to indicate that the invoices were destroyed by the witness with any fraudulent purpose in mind or to prevent a check upon the results he obtained with their use.

On the record made, I am satisfied that the admission of the testimony of the wishes as to the breakdown of the lump-sum figures given at the original trial does not violate the best evidence rule, and the objections of the defendant to its admission or to according it any probative value are overruled.

For the reasons stated in my original opinion, I adhere to the findings and conclusions made with respect to the other elements of statutory cost of production. The result of the combined record, in my view, supports the following tabulation of the amounts of the elements of cost of production, as defined by section 402(f), *supra*, applicable to the merchandise imported in the years 1952 and 1953, and up to November 1954:

Section 402(f), paragraph

| Item No. | (1) Materials and fabrication | (2) Usual General Expenses: | | | | Sum of (1) and (2) | (3) Packing | (4) Profit | Cost of production |
| | | Factory | Office | Selling | Total | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 18 | Can. $2.37 | $0.72 | $0.36 | $0.58 | $1.66 | $4.03 | $0.18 | $0.32 | Can. $4.53 |
| 24 | 2.40 | 0.75 | 0.33 | 0.58 | 1.66 | 4.06 | 0.18 | 0.32 | 4.56 |
| 54 | 6.72 | 2.25 | 0.92 | 1.98 | 5.15 | 11.87 | 0.18 | 0.95 | 13.00 |
| 72 | 6.82 | 2.25 | 0.93 | 1.98 | 5.16 | 11.98 | 0.20 | 0.96 | 13.14 |

As was pointed out in my original opinion, the record shows that beginning in November 1954, there was an increase in the cost of materials amounting to 3 cents per gross of cards of the finished product, but there was no change in the other cost of production factors. Consequently, the cost of production applicable to the merchandise exported during and after November 1954, was 3 cents more than is indicated in the last column above and was as follows:

| Item No. | Cost of production |
|---|---|
| 18 | Can. $4.56 |
| 24 | 4.59 |
| 54 | 13.03 |
| 72 | 13.17 |

On the entire record presented, I find as facts:

(1) That the merchandise involved herein consists of rubber-tipped bobby pins of patented construction, imported from Canada during the years 1952, 1953, and 1954.

(2) That at or about the times of exportation involved herein neither such nor similar merchandise was freely offered for sale to all purchasers for home consumption in Canada or for exportation to the United States.

(3) That at or about the times of exportation involved herein neither such nor similar merchandise was freely offered for sale to all purchasers in the principal market of the United States.

(4) That at or about the times of exportation involved herein the elements of cost of production applicable to the involved merchandise were as shown in the summations set forth above.

I conclude as matters of law:

(1) That the proper basis of value for the merchandise at bar is cost of production, as defined in section 402(f), Tariff Act of 1930, and

(2) That such cost of production for each of the items involved is as follows:

| Item No. | Merchandise exported | |
|---|---|---|
| | Prior to Nov. 1954 | After Nov. 1954 |
| 18 | Can. $4.53 | Can. $4.56 |
| 24 | 4.56 | 4.59 |
| 54 | 13.00 | 13.03 |
| 72 | 13.14 | 13.17 |

The judgment heretofore entered in this case is vacated and set aside, and judgment will issue in accordance with the above findings and conclusions.