(A.R.D. 139)

UNITED STATES *v.* C. J. TOWER & SONS

Entry No. 3445, etc.

SECOND DIVISION, APPELLATE TERM

(Decided January 11, 1962)

*William H. Orrick, Jr.,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellant.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellee.

FORD, Judge: The appeals for reappraisement enumerated in schedule "A," hereto attached and made a part hereof, relate to certain rubber-tipped bobby pins, imported from Canada. The bobby pins were attached to cards which contained 18, 24, 54, or 72 pins.

The case is before us at this time to review the decision of the trial court in *C. J. Tower & Sons* v. *United States*, 44 Cust. Ct. 532, Reap. Dec. 9579, wherein it was held that the proper basis of appraisement is cost of production, as defined in section 402(f) of the Tariff Act of 1930.

The parties have agreed that there was no foreign value applicable to the merchandise involved, as that term is defined in section 402(c) of the Tariff Act of 1930, as amended. There is no dispute that the merchandise was appraised on the basis of export value, which value is defined in section 402(d) of said act.

Appellee herein contends that there existed no export or United States value, within the meaning of said terms, as defined in section 402, *supra*, at the time of exportation herein and that the proper basis of appraisement of the merchandise herein is cost of production, as defined in section 402(f) of said act.

Mr. Samuel Tick testified on behalf of the importer herein that he had a patent for this type of bobby pin in Canada, the United States, and Great Britain and that there was no other manufacturer of rubber-tipped bobby pins in Canada.

The record establishes that the importer herein had eight agents who were assigned designated territories in the United States. They were to sell the involved merchandise only within the confines of the territory assigned to them. The agreement also provided that all sales must be accepted by the manufacturer in Canada. The manufacturer sold only to wholesalers and chain and variety stores. One wholesaler was selected in each city in which the product was sold and only 18 chain or variety stores, out of approximately 96 chain or variety stores known to the witness, were sold or offered the imported merchandise. Mr. Tick testified that, in addition to this, he had occasion to refuse to sell merchandise to certain customers because they did not maintain the retail price stamped on each card of bobby pins. On this point, there appears to be some conflict, since the report of the Treasury attaché, received in evidence as defendant's exhibit A, states that Mr. Tick made the following statement: "He stated, however, that he is unable to police this situation and knows of many instances where his pins were offered for sale at less than the prices shown on the cards and no objection was made by him." When confronted with this, the witness denied having made such a statement and again indicated that he

had refused to sell to customers when they did not maintain the retail price printed on the card.

Based upon the record, the importer contends that no export value for "such" merchandise existed, since the rubber-tipped bobby pins were not freely offered or sold in Canada to all purchasers for exportation to the United States, since they were restricted to selected purchasers and the resale price was controlled. It is also contended by said importer that no export value existed for "similar" merchandise, since it was the only manufacturer of rubber-tipped bobby pins in Canada and, for the further reason, that said bobby pins were produced under a patent held by it.

On the other hand, it is contended by the Government that an export value for "such" merchandise does exist. It is contended that the merchandise is freely offered for sale to all purchasers and that the territorial limitation of the salesmen does not limit the free offering of the merchandise. It is also contended by counsel for the Government that, in the event the court finds that "such" merchandise is not freely offered, there was "similar" merchandise. This is based on the theory that bobby pins are bobby pins and that the mere addition of a small quantity of rubber does not change the articles, since they are used in substantially the same manner, and are made from approximately the same material, by the same process, and of approximately the same value and cost of production. It is, therefore, contended that, since the record is silent with respect to how "similar" merchandise is offered for sale, appellee has failed to overcome the presumption of correctness attaching to the value found by the appraiser, citing *Japan Import Co.* v. *United States*, 24 C.C.P.A. (Customs) 167, T.D. 48642; *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714; *United States* v. *The American Bluefriesveem, Inc.*, 22 C.C.P.A. (Customs) 67, T.D. 47063; *United States* v. *Thomas & Co.*, 21 C.C.P.A. (Customs) 254, T.D. 46788.

With respect to export value for "such" merchandise, we find the record amply supports the fact that the merchandise is not freely offered for sale to all purchasers for export to the United States. The fact that the merchandise was sold only to one wholesaler in each district and the restriction with respect to the ultimate retail selling price, which restriction we find to have existed, precludes a finding of export value for "such" merchandise.

The question of export value of similar merchandise must next be considered. The fact that the involved merchandise is the subject of a patent, would indicate for patent purposes at least, that the articles possess elements of invention, novelty, and utility. We are of the opinion that these features which are essential to the issuance of a patent do not *ipso facto* negate similarity for the determination of

customs valuation. The term "similar," as used in section 402 of the Tariff Act of 1930, has been litigated before this court and our appellate court on many occasions. From these decisions, certain elements have been determined to be necessary for an article to be similar for the customs purpose of valuation.

In the case of *H. J. Heinz Company* v. *United States*, 43 C.C.P.A. (Customs) 128, C.A.D. 619, our appellate court made a rather complete study and reviewed most of the leading cases involving similarity. The court therein concluded that the term "similar," as used in section 402 of the Tariff Act of 1930, relates to merchandise of approximately the same price, approximately the same materials, and is adapted to the same use, and may be substituted therefor.

The court, in the *Heinz* case, *supra*, stated as follows:

> In *United States* v. *Wecker & Co.*, 16 Ct. Cust. Appls. 220, T.D. 42837, this court said:
>
>> The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402(b).
>
> In *United States* v. *Thomas & Co.*, 21 C.C.P.A. (Customs) 254, 260, T.D. 46788, the court gave the following discussion of how the term "similar" should be applied.
>
>> Congress, by providing for the determination of the value of imported goods by accepting as such value the value of certain similar merchandise sold in the country of exportation, sought to provide a fair means of determining the value of certain importations, which ofttimes was difficult or impossible to ascertain, unless the value of a similar or comparable article was accepted as such. Frequently there was no article sold abroad which was identical with the imported article. But, if there was a similar article, the value of which was a fair value to be applied to the imported article, then that value should be taken.

A consideration of the basic factors which were indicated to be necessary in the determination of similarity in the *Heinz* case, *supra*, in our opinion, establishes that both rubber-tipped bobby pins and nonrubber-tipped bobby pins are adapted to the same use, i.e., to keep women's hair in place. The materials used for both types of bobby pins are substantially the same. This is borne out by the cost-of-production figures submitted by appellee herein which, as far as cost of material and fabrication is concerned, are as follows:

| Per gross | 18 pins per card | wire | $0. 77 |
|---|---|---|---|
|  |  | cards | . 40 |
|  |  | rubber | . 10 |
|  |  | labor | 1. 10 |
|  |  | Total | $2. 37 |
| Per gross | 24 pins per card | wire | $. 78 |
|  |  | rubber | . 12 |
|  |  | cards | . 40 |
|  |  | labor | 1. 10 |
|  |  | Total | $2. 40 |
| Per gross | 54 pins per card | wire | $2. 31 |
|  |  | cards | . 61 |
|  |  | rubber | . 30 |
|  |  | labor | 3. 50 |
|  |  | Total | $6. 72 |
| Per gross | 72 pins per card | wire | $2. 34 |
|  |  | cards | . 62 |
|  |  | rubber | . 36 |
|  |  | labor | 3. 50 |
|  |  | Total | $6. 82 |

The foregoing worked out to its mathematical conclusion results in a cost of 10 cents for the rubber in the production of 1 gross of cards containing 18 pins each, or the equivalent of approximately 0.004 of a cent per pin. Based upon an inconsequential difference, we would not hesitate to consider the involved bobby pins to be of approximately the same material.

The question as to similarity of material has recently been given a much broader interpretation than heretofore in the case of *United States* v. *The Heyman Co., Inc.*, 48 C.C.P.A. (Customs) 13, C.A.D. 755, wherein certain sisal pads and pads of istle fiber used for the same purpose and having all the other requisites were held to be similar for the tariff purpose of valuation.

The question of approximately the same cost must next be considered by the court. Section 402(d) of the Tariff Act of 1930 provides as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The record is barren of any evidence of the market value or price of nonrubber-tipped bobby pins or whether such merchandise was or was not freely offered for sale, etc. The record herein does contain the fact that the manufacturer has doubled its profit on rubber-tipped bobby pins as compared to nonrubber-tipped bobby pins, which it manufactured from 1939 to 1949. His testimony related only to his own experience and, hence, does not establish anything with respect to other manufacturers of nonrubber-tipped bobby pins. The profit was doubled, the manufacturer testified, since the cards contained only half the number of pins for the same price. It would seem on the retail level that there was a 100 per centum increase in the price for the same quantity. However, as indicated, *supra*, the record is barren of any evidence relating to the market value or price of nonrubber-tipped bobby pins. This evidence being lacking, appellee has, in our opinion, failed to negate the value found by the appraiser and has, accordingly, failed to overcome the presumption of correctness attaching to said finding.

In view of the conclusion herein, it is unnecessary to consider the finding of the court below relative to United States value or cost of production.

Accordingly, we find the following facts to be present herein:

1. The merchandise involved herein is metal rubber-tipped bobby pins, imported from Canada between March 1952 and December 1954.

2. That such or similar merchandise was not freely offered for sale to all purchasers, at the time of exportation herein, in the principal markets of Canada, in the usual wholesale quantities and in the ordinary course of trade for home consumption.

3. That such merchandise was not freely offered for sale to all purchasers at the times of exportation herein, in the principal markets of Canada, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States.

4. That appellee has failed to establish that similar merchandise was not freely offered for sale to all purchasers at the times of exportation herein, in the principal markets of Canada, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States.

We, therefore, conclude as matters of law:

1. That the value found by the appraiser, while is presumptively correct, has not been overcome.

2. That the proper value of the merchandise in controversy is the export value found by the appraiser.

The judgment of the trial court is reversed.

Judgment will be rendered accordingly.