(Reap. Dec. 10786)

MAGNOLIA PETROLEUM COMPANY *v.* UNITED STATES

Entry No. B-47, etc.

(Decided June 30, 1964)

*Sharretts, Paley & Carter* (*Eugene F. Blauvelt* of counsel) for the plaintiff. *John W. Douglas,* Assistant Attorney General (*Morris Braverman* and *Harold L. Grossman,* trial attorneys), for the defendant.

WILSON, Judge: These are appeals for reappraisement of the value of certain chrome bead catalyst, exported from West Germany during

the period December 1956 to April 1957. All of the shipments herein involved were made prior to the effective date of the Customs Simplification Act of 1956.

The merchandise was appraised on the basis of foreign value, as defined in section 402(c) of the Tariff Act of 1930, as amended, at a unit value of 180 DM per 100 kilos. Plaintiff claims that the proper basis of appraisement was cost of production, as defined in section 402(f) of the tariff act, and that said cost of production for the merchandise herein involved was either 145 DM or 150.69 DM per 100 kilos for certain of the merchandise involved.

Specifically, plaintiff, in these appeals, contends that there was no foreign value for such or similar merchandise during the period involved, because of legal restrictions requiring the purchasers thereof to obtain a license from certain holders of a patented process before being able to use the product; that there was no export value for such or similar merchandise within the meaning of section 402(d) of the tariff act, because the merchandise was not freely offered for sale for export to the United States by the sole manufacturer thereof in West Germany; and that there was no United States value for such or similar merchandise, within the meaning of section 402(e) of the Tariff Act of 1930, as amended, inasmuch as the merchandise, after importation into the United States, was "consumed" by Magnolia Petroleum Corporation, the importer herein, and was not offered for resale. In view of the above, plaintiff, accordingly, contends that cost of production represents the proper basis for the determination of the value of the involved merchandise, and that the proper cost of production is as claimed herein.

The record in the case at bar consists of the testimony of one witness on behalf of the plaintiff and certain documents introduced in evidence (plaintiff's exhibits 2–4), and, in addition, a report made by United States Treasury agents relative to the manufacture, price terms, and sales conditions of chrome bead catalyst, manufactured by the plaintiff (defendant's exhibit A).

Plaintiff's exhibit 3 is an affidavit, dated April 17, 1963, of Marshal N. Clark, manager of staff services for Magnolia Petroleum Corporation, Beaumont, Tex. The affiant therein testified that the merchandise under consideration was consumed in the company's refinery in the process of refining crude petroleum; that the involved merchandise was not offered for resale; and that the said shipments were the only purchases of this material made by his company from the exporter herein during the years 1956 and 1957.

Plaintiff's exhibit 4, dated April 5, 1963, is an affidavit of Dr. F. Goebel, plant manager of the Kali-Chemie plant at Nienburg-Weser, West Germany, since 1947. Attached to said affidavit is a record,

made up for the purpose of royalty accounting to the Socony Mobil Oil Co. in New York, of all sales of the manufacturer during the months here in question, in which the customer's name, amount, and sales prices are given. Dr. Goebel stated, in said affidavit, that, to his knowledge, no other manufacturer in West Germany produced a chrome bead catalyst in any way similar to that produced by the exporter herein and that the chrome bead catalyst is a unique product quite unlike all other catalysts manufactured in West Germany during 1956 and 1957 for use in petroleum refining. The affiant further stated that, during the period under consideration, the chrome bead catalysts were neither sold nor offered for sale for exportation to the United States to anyone other than the Magnolia Petroleum Corporation. The affidavit of Dr. Goebel further relates to certain claimed cost figures of Kali-Chemie relative to the manufacture of merchandise, such as here involved, the pertinent items of which will be subsequently referred to as deemed necessary in the present discussion.

Defendant's exhibit A is a report, dated July 2, 1958, by United States Treasury agents with reference to the condition of sale under which Kali-Chemie A.G., Hanover, Germany, the manufacturer herein, sold the involved merchandise. The relevant details of said report will be hereinafter referred to as deemed necessary.

Plaintiff called as its witness Oswald G. Hayes, an attorney employed, since 1941, in the patent department of Socony Mobil Oil Co. The record discloses that the witness has had varied experience in the practice of patent law. Mr. Hayes testified that he had prepared patent applications for chrome bead catalyst in the United States and that he had also handled patent applications for the product in some 25 foreign countries, including West Germany, it appearing, further, that application for the patent in the latter country had been made on September 28, 1950 (R. 7–8). Mr. Hayes further stated that he had seen the process in which the imported material was used, and that it was a process of refining crude petroleum known as the TCC process (R. 14).

Plaintiff's witness further testified that his company had made an agreement with Kali-Chemie for the manufacture of the imported product and that the latter company is the only one licensed by Socony Mobile Oil Co. to manufacture chrome bead catalyst (R. 14–15). The witness thereupon indicated several West German companies licensed to use the TCC process. The sales reports of Kali-Chemie Co. covering the last quarter of 1956 and the first quarter of 1957 showed sales in West Germany to other companies or customers than those licensed to use the TCC process (R. 17). The five shipments involved herein were the only purchases of the chrome bead catalyst from Kali-Chemie Co. made during the pertinent period by the plain-

tiff, a corporation wholly owned by Socony Mobil Oil Co. (R. 19). It further appears that a similar process for refining petroleum by employing a bead catalyst was the subject of patents held by another United States company, the Houdry Process Corp., Philadelphia, U.S.A., which company had also licensed a purchaser in West Germany to use its patented process (R. 26). Mr. Hayes further testified that it was part of his function in the company to keep advised of possible patent infringements by users of chrome bead catalyst, but that his company had not investigated the use made by purchasers of small quantities. He admitted that, at one time prior to December 1955, there was a user of the catalyst with whom his company did not have an arrangement, but that, in 1956 and 1957, arrangements had been made through him granting use of said catalyst to all users thereof (R. 23).

The issue in the case at bar is whether the fact that the purchaser of the involved merchandise had to obtain from the holder of certain patent rights a license to use the product in a patented petroleum refining process constituted such a "restriction" as to preclude a finding of foreign value for the merchandise.

The plaintiff, in these appeals, has the statutory burden not only of establishing that the presumptively correct finding of value for the imported merchandise is erroneous but must also further establish that its own claimed value is correct. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495. The fact that purchasers of such or similar merchandise as that here involved had to obtain a license in order to make use of the material in a patented process does not by that fact alone, in my opinion, create a controlled market so as to bar a finding of foreign value for the merchandise under consideration. While purchasers of merchandise, such as that in question, who used or attempted to use it without authorization from the holders of the patented rights for the cracking process, might be subject to litigation for such failure to obtain the necessary authorization, that does not obviate the fact that as between the seller and such purchasers the sale itself could be without restriction so as to accord with a free offering of the merchandise. Here, the manufacturer of the involved merchandise was able to freely offer for sale, without any restraint or restriction, and did freely offer said merchandise for home consumption (defendant's exhibit A, page 4). The purchasers of such merchandise were free to use it for the purpose for which it was intended upon payment to the patent holders of a set fee for the available license which, it appears, was readily obtainable. Indeed, as appears from the record, use of this merchandise had been made by certain parties without payment of a fee to the patent holders (R. 17, R. 23).

In support of its contention that the market for the involved merchandise was controlled, plaintiff, in its brief, directs our attention

to certain holdings of this and our appellate court on the question of controlled market for merchandise. Typical of these is the case of *United States* v. *Graham & Zenger, Inc.*, 31 CCPA 131, C.A.D. 262. There, by governmental mandate, a purchaser of glassware for home consumption was precluded from disposing of such merchandise for any use save that of home consumption. Our appellate court therein held such governmental prohibition to be a restriction as to use of the merchandise, thus creating a controlled market. The court, accordingly, upheld the finding of the single judge and our appellate division that foreign value was not the proper basis for appraisement of the merchandise there involved. The factual situation which exists in the case at bar, however, differs from that which obtained in the *Graham & Zenger, Inc.*, case, *supra*. Here, the sale of the merchandise under consideration was not controlled by any mandatory governmental decrees nor was it circumscribed by any such restrictive provisions as were present in the *Graham & Zenger, Inc.*, case. The sales here in question, unlike those in the latter case, were freely made between seller and purchaser and were not accompanied by any restriction with regard to resale or other disposition of the merchandise. There was, accordingly, a free offering of the merchandise in the home market.

The other cases cited by the plaintiff to support a conclusion that the sale of the merchandise at bar was so "restricted" or controlled so as to bar a finding of foreign value, are likewise, in my opinion, not applicable in the determination of the issue here presented. Further, in the case at bar, the plaintiff has failed to show that there was no "similar" merchandise offered for sale in the country of exportation. Under the statutory provisions (section 402(c)) of the Tariff Act of 1930, the foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or "similar" merchandise is freely offered for sale to all purchasers. The fact that the involved merchandise is the subject of a patent does not, in my opinion, preclude the existence for customs purposes of similar merchandise. As was stated by the court in *United States* v. *C. J. Tower & Sons*, 48 Cust. Ct. 683, 685, A.R.D. 139 (reversed on other grounds in *C. J. Tower & Sons* v. *United States*, 50 CCPA 76, C.A.D. 824):

* * * the fact that the involved merchandise is the subject of a patent, would indicate for patent purposes at least, that the articles possess elements of invention, novelty, and utility. We are of the opinion that these features which are essential to the issuance of a patent do not *ipso facto* negate similarity for the determination of customs valuation.

See also, *United States* v. *A. N. Deringer, Inc.*, 42 Cust. Ct. 711, A.R.D. 102. Plaintiff, in this case, has failed to overcome the presumption of correctness attaching to the appraiser's finding of value herein. I

further find that it has not established any other correct value for the involved merchandise, deeming it unnecessary to discuss the question whether the plaintiff has failed to establish all the elements of its claimed cost-of-production valuation.

On the basis of the record here presented, I find as facts:

1. That the involved merchandise consists of certain chrome bead catalyst, manufactured by Kali-Chemie A.G., Hanover, West Germany, and exported therefrom in December 1956, and January, February, and March 1957.

2. That, at the times of exportation of the involved merchandise, such or similar merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of West Germany, in the usual wholesale quantities and in the ordinary course of trade, there being no restriction or control imposed upon the sale of the merchandise so as to preclude for customs purposes a finding of foreign value.

3. That the evidence in this case fails to establish that the appraised values are erroneous and that the other values claimed by the plaintiff are correct.

I conclude as matters of law:

1. That foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis for the determination of the value of the merchandise here involved, and

2. That such value for the merchandise in question is in each case the appraised value.

Judgment will issue accordingly.