UNITED STATES *v.* W. WRIGHTSON

**No. 5108.**—Invoice dated Caibarien, Cuba, August 4, 1939.
Entered at Miami, Fla., August 7, 1939.
Entry No. M–55.

Third Division, Appellate Term

(Decided January 29, 1941)

*Charles D. Lawrence,* Acting Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellant.
No appearance for the appellee.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is an application for review of the decision of the trial court published in Reap. Dec. 4913. The merchandise under reappraisement consists of roofing tiles exported from Caibarien, Cuba, on or about August 4, 1939. The new tiles were invoiced at $10 per thousand, the old ones at $12 per thousand, United States currency. The merchandise was appraised at the invoice and entered value.

When the case was called for trial before the single judge the importer appeared without counsel. The Government, the plaintiff in the case, offered the testimony of Mr. P. J. Galvin, who is a United States customs agent stationed at Miami, Fla. He testified that he made an investigation in Cuba with respect to the tiles covered by the instant shipment; that he went to the office of the shipper— Compania de Maderas—in Caibarien and talked with Mr. Linares and Mr. Fernandez; that Mr. Linares told him that he charged Captain Wrightson $1 commission on the factory price paid by him for tile in Cuba; that he examined the records of the company which showed sales on May 11, 1939, of 3,000 new tiles at $15 per thousand to the Remedios Water Works; that there was a sale on May 24, 1939, at $18 per thousand; that there was a purchase of 5,400 old tiles from Vincente Chao at $18 per thousand on June 8, 1939; that the records did not show any sales for export. Subsequently he testified that the purchase of the 5,400 old tiles on June 8, 1939, was made at $16 at Placetas, which is about 35 miles from Caibarien. The witness testified further that 41,000 new tiles were purchased by Compania de Maderas from Jose Varela at Guayos at $13 per thousand. He testified further that Mr. Linares told him that the Compania de Maderas put the tiles on the dock to be loaded on Captain

Wrightson's ship; that he did not recall if the sales he mentioned referred to the particular shipment here under consideration; that he found one entry of August 4, 1939, on the books in which 46,000 new tiles were invoiced to Captain Wrightson at $10 per thousand and 10,200 old tiles at $12 per thousand and that was the transaction covered by the instant shipment; that the records showed a purchase by Compania de Maderas from Jose Varela of 47,500 new tiles at $18 per thousand on July 31, 1939, and he was of opinion that those tiles were the same ones which were purchased by Captain Wrightson. The witness was asked if he could trace the 10,200 old tiles covered by the invoice herein involved and he answered:

A. That is difficult to answer because they pick up tile at various places there. The only way you can pick it up and connect it up with the entry is to find the day it was purchased.

The witness testified further that all of the sales and all of the purchases were made by Compania de Maderas in the city of Caibarien. In testifying as to the details of the purchases and sales of Compania de Maderas, the witness refreshed his memory by referring to a report which he had in his possession. The importer attempted to cross-examine the witness, but, as he appeared to be unable to ask a direct question, the judge presiding at the trial permitted the importer's son to complete the cross-examination. The witnesss testified that he does not speak the Spanish language but he had an interpreter with him when he visited Compania de Maderas. When asked if the records were in English the witness testified that the money and the number of tiles were in English and that he knew the word "tejas" was the Spanish word for "tile."

While a great deal of the testimony of the witness relates to things told him by others and would have been inadmissible if objection had been made thereto, since there was no objection on the part of the importer the evidence must be considered. *New England Fish Co.* v. *United States*, 15 Ct. Cust. Appls. 34, T. D. 42137.

The plaintiff offered also a report of customs agent P. J. Galvin addressed to the Customs Agent in Charge at Miami, Fla. The report was received in evidence and marked "exhibit 1."

The importer was then sworn as a witness in his own behalf. He testified that he was running a ship from Cuba to Miami; that he sent a check to Mr. Linares to buy the tiles; that the agreement was to pay $10 per thousand for the new tiles and $12 for the old and $4 for trucking from the factory; that he paid Linares $2.80 for his wharf and $1 commission; that "Varela is not the seller. He is only a trucker."

The plaintiff offered an affidavit of Edward G. Linares which was written in the Spanish language, and Walter Wrightson, Jr., the son

of the plaintiff, who appeared able to translate Spanish into English readily, translated the document in open court. It appears from this translation that from December 1938 Compania de Maderas acted as commission merchant for Mr. Wrightson for the purchase of tiles. The translation of the witness contains the following:

This company, the Compania de Maderas, has concept of the commission the sum of $1., official money, for each thousand tiles as acquired here for said Mr. Wrightson, making the purchase charge a very satisfaction for the account of this said man the cost of the freight of the tiles in question and whatever eventual expense by concept of transportation or other motive.

While this statement is rather vague, we construe it to mean that Mr. Wrightson pays Compania de Maderas a commission of $1 for the purchase of tiles and pays the freight or transportation charges.

Counsel for the plaintiff objected to the translation on the ground that the witness was not qualified to translate and that the contents thereof are irrelevant to the issue herein. The objection was overruled by the trial court. The appellant does not assign error before this division to the admission of the document or the translation thereof.

After the admission of exhibit 2 the Government recalled the importer for further cross-examination. He testified that at no time did he ever pay more than $10 per thousand for the new tiles and $12 for the old; that he had paid $8, however. The witness was interrogated about a number of earlier transactions, from December, 1938, to April, 1939, at different prices, but he was unable to give a definite answer stating, "I have no records of it." He stated, however, that at that time he paid Varela, who is a trucker from Guayos and not a factory man, $3 and sometimes $4 for trucking from the factory to Caibarien and there was a wharf and lighter charge of $2.80 and a charge of $1.70 for commission. The witness testified that he had no records of the various shipments, except of the last three which appear to have been entered after the instant shipment.

Exhibit 1, which is a report of customs agent Galvin, contains substantially the same evidence which is covered by his testimony. With respect to the conversation with Mr. Linares, he reports as follows:

Mr. Linares stated that his arrangement with Captain Wrightson was more or less of a friendly nature; that it was brought about through a friend of his, W. L. Fernandez; that he purchased tile from various tile factories in the vicinity of Caibarien such as Placetas, Sancti Spiritus, Gayas, etc.; that he charged Wrightson the factory price plus $1.00 per thousand as a commission; that Wrightson agreed to pay all charges accruing upon the tile from the factory to his vessel, the "JOSEPHINE WIMSATT"; that he did not sell tile to anyone else for either export or home consumption, and that he was contemplating the discontinuance of his relationship with Captain Wrightson as it was not commercially profitable to him.

However, despite the statement of Mr. Linares, a perusal of his records indicates that he purchases tile outright and sells it to Wrightson and that he also has sold

tile for local consumption in the vicinity of Caibarien. The sales made to Wrightson did not appear on the books of record of the firm but were in a separate folder and no copies of invoices were found in this folder although reference was made in correspondence to the sale of 41,000 tile to Wrightson.

Copies of invoices are attached to exhibit 1. While they are written in the Spanish language, the figures, which we are able to read, appear to be the same characters used on invoices in the English language. These invoices appear to be evidence of some of the sales concerning which Mr. Galvin testified in his direct examination. There is a wide variety of prices on the invoices and the number of pieces purchased do not seem to affect the values. The names of the sellers, the dates of the invoices and the number of pieces and the prices are as follows:.

| Compania de Maderas, | May | 11, 1939 | 3,000 | @ $15.00 |
| " " " | " | 24, " | 1,200 | @ $18.00 |
| Vincente Chao, Placetas | June | 8, " | 5,400 | @ $16.00 |
| Jose Varela, Guayos | " | 17, " | 41,000 | @ $13.00 |
| Bernardo Lotra, Villa | " | 30, " | 530 | @ $16.00 |
| | | | 300 | @ $13.00 |
| Jose Varela, Guayos | July | 7, " | 300 | @ $11.00 |
| " " " | " | 31, " | 47,500 | @ $18.00 |

We are unable to determine from an examination of the copies of the invoices whether they refer to new or old tiles.

We have reviewed the record in great detail because counsel for the appellant strenuously argue before this division that we should find from the record that it is established by the evidence that the value of the tiles is $16 per thousand for the new tiles and $18 for the old. The appellee did not appear before this division, but it appears from the testimony at the original hearing that he contends that the difference between the invoice values and the values contended for by the Government is due to a commission he paid the shipper for buying and to charges for trucking and dockage.

The trial judge heard the testimony, and, accordingly, is the best judge of the competency of the witnesses and the weight to be given to their testimony. He reached the following conclusion:

It must be borne in mind that this appeal for reappraisement is a collector's appeal. This being true, that part of section 501 of the Tariff Act of 1930, providing in substance that the value found by the appraiser shall be presumed to be the value of the merchandise and that the burden shall rest upon the party who challenges its correctness to prove otherwise, is just as binding in a reappraisement case on a collector's appeal as it is on an importer's appeal.

After carefully considering the record before me I am of the opinion, and I so hold, that the plaintiff has not met the burden placed upon it in this case; and that it has not produced sufficient probative evidence to overcome the presumption of correctness attaching to the appraiser's finding of value in the appraisement of the instant merchandise.

I therefore find that the appraised values are the proper dutiable values of this merchandise. Judgment will be rendered accordingly.

We are unable to find from an examination of this record that the trial court erred in its decision. The Government, the plaintiff in the case before the trial court, had the burden of proving all essential elements necessary to establish value.

In the case of *United States* v. *Downing & Co.*, 20 C. C. P. A. 251, 253, T. D. 46057, the court enumerated the burden of proof cast upon the plaintiff in a reappraisement case, using the following language:

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the nonexistence of an export value, or (2) an export value and the nonexistence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

The plaintiff made no attempt to show an export value for the tiles or an absence of export value, and its attempt to show a foreign value was insufficient. There appears a failure to establish what was the principal market in Cuba for such tiles, the usual wholesale quantities in which such merchandise was sold or offered for sale in the ordinary course of trade, and the price at which the merchandise was freely offered for sale "for home consumption." The importation in this case was entered on August 7, 1939, which is subsequent to the enactment of the Customs Administrative Act of 1938 (52 Stat. 1077), and is therefore governed thereby. Section 321 (8) of that act amends section 402 (c) of the Tariff Act of 1930 by adding the words "for home consumption" after the words "freely offered for sale" so that section 402 (c), as amended, reads:

FOREIGN VALUE.—The foreign value of imported merchandise shall be the *market value or the price at the time of exportation of such merchandise to the* United States, at which such or similar merchandise is freely offered for sale *for home consumption* to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Italics ours.]

In exhibit 1 the customs agent reports that Compania de Maderas sold the merchandise for local consumption but he does not state how he obtained such information. If his opinion was based merely on an inspection of the invoices, it is a conclusion and has no probative force. The customs agent expresses other conclusions in his report which have no weight as evidence, such as his understanding of the commercial relations between Compania de Maderas and the importer and his belief that there was fraud in this transaction.

The record in this case is in some respects similar to that in *United States* v. *International Forwarding Co., Inc., et al.*, 27 C. C. P. A. 21,

C. A. D. 56, in that all of the evidence produced by the Government relates to transactions with Compania de Maderas although other firms also deal in the goods. The testimony as to the commercial practice of that one concern is not sufficient evidence upon which the court can make a finding that all dealers offer and sell such merchandise upon the same basis. In the case cited, the court said:

We are clear that the circumstances attending the sales in Germany by the manufacturer of the involved merchandise are not such as to create any presumption that such sales were representative of the sales in Germany by other manufacturers of such or similar merchandise, and certainly there can be no presumption that sales in Germany of such or similar merchandise were not made by other manufacturers without restriction, the record being wholly silent upon that subject.

We find that all of the essential elements necessary for appraisement are not established by the evidence in this case, since the plaintiff failed to introduce competent evidence to establish (1) the principal market in Cuba for the sale of tiles, (2) the usual wholesale quantities in which such articles were freely offered for sale in the ordinary course of trade, (3) the price at which such or similar merchandise was freely offered for sale for home consumption in Cuba, and (4) the export value of the tiles, or the absence of such value. We agree with the trial court and hold that the presumption of correctness attaching to the appraisement has not been overcome. The judgment below is affirmed.