(Reap. Dec. 11112)

CASTELAZO & ASSOCIATES v. UNITED STATES

Entry No. DE 22390, etc.

(Decided December 9, 1965)

*Lawrence & Tuttle* (*Edward N. Glad* and *Norman C. Schwartz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*James F. O'Hara* and *Sheila N. Ziff*, trial attorneys), for the defendant.

OLIVER, Judge: This appeal for reappraisement covers eight entries of merchandise. Entry numbers DE 25568, DE 27948, and DF 28878 consist of certain flanges, exported from West Germany and Belgium during 1957 and 1958, by Stahlunion-Export GMBH of Dusseldorf, Germany. Entry numbers DE 22390, DE 29374, DE 9244, DE 11161, and DE 22368 consist of various metal welding fittings, exported from West Germany by Stahlunion-Export GMBH

during 1957. The merchandise was appraised on the basis of export value, as defined in section 402(d) of the Tariff Act of 1930.

By written stipulation entered into by the parties herein, it was agreed that the values returned by the appraiser for the flanges in entries DE 25568 and DE 27948 are as stated on appraisement, except for certain items wherein a new value was agreed upon.[1] The appeal covering entry number DE 28878 was abandoned and is hereby dismissed.

Thus, there remains in issue only the proper dutiable values of the entries covering the imported welded fittings. As to these entries, it was agreed upon at trial that the proper basis for appraisement of this merchandise is export value, as defined, *supra*, and as adopted by the appraiser in his appraisement.

It is plaintiff's contention that the proper export value of this merchandise is the invoice value, plus 5 percent. The 5 percent addition represents a special discount granted to North America E. B. & Co., the company for whose account the merchandise was imported. The defendant contends that the correct dutiable values for this merchandise are the appraised values which reflect discounted prices from a pricelist followed in Germany for sales to the United States.

However, by further written stipulation, the parties agreed, with respect to entries DE 22390, DE 9244, and DE 22368 that, in the event that the court sustains the appraised values for this merchandise, the proper values for those items appraised at a unit value of $2.91 per 100 pieces, less stated discounts, should be appraised at a unit value of $2.32 per 100 pieces, less the discounts stated on appraisement.

At the trial, the plaintiff introduced the affidavit of Herbert Krueger Kirdorf, sales manager of the Fittings Department of Stahlunion-Export GMBH, and it was received in evidence as plaintiff's collective exhibit 1. The affidavit of Mr. Kirdorf relates, in substance, the following information: That, since 1930, he has been associated with the Stahlunion-Export Co., which company is engaged in the selling of various steel products manufactured by German steel mills for exportation; that he has become personally familiar with the selling practices and policies of not only his company but of the various German steel mills and his competitors, other exporting companies; that the welded fittings, exported to North America E. B. & Co. in 1957 and 1958, were manufactured to American specifications (ASA standards for dimensional tolerance and ASTM specifications as to chemical and physical properties) in response to a demand created by

---

[1] These stipulated values are as set forth in my findings of fact No. 6.

requests from American buyers; that, although North America E. B. & Co. was the first importer to place orders with his firm, Stahlunion was always free to, and did, in fact offer and sell the fittings to other buyers in the United States; that, in 1957, it sold a total of 12 tons of welded fittings to United States importers, one-third of which was to buyers other than North America E. B. & Co.; that the prices for which it offered these items for export to the United States were based on the production costs to the mills, plus his firm's standard markup; that the prices do not vary because of the quantities purchased and are the same for each size and type of fitting to all American buyers, save for a 5 percent discount, sometimes offered to North America E. B. & Co. and are all sold without restriction as to disposition or use; finally, because the American market represented a new field of manufacture, the German producers maintained no pricelist for this merchandise, nor does his firm use a pricelist, nor has he ever heard of any pricelist in use by any organization or association of German manufacturers or exporters.

Plaintiff called as its only witness, Eugene Banzhaf, who identified himself as president of North America E. B. & Co. He testified that his company is in the importing-exporting business, dealing mainly in steel products, such as pipes, flanges, and fittings; that he had been president of the company for the last 14 years and that his duties included purchasing and selling, as well as administration and supervision. Mr. Banzhaf then related the story of how, in 1954, after receiving demands for the products listed on the invoices involved herein, he had contacted Stahlunion in an effort to find out if the German mill, from whom he had been receiving pipe at that time, could produce these steel fittings to American standards. That, from 1954 to and including 1958, he would make trips to the German mill, accompanied by Stahlunion representatives, and add to the size and type of items he had been purchasing. He would discuss with the mill only the specification requirements of different items and never the price. Prices were only quoted by Stahlunion, which prices, he stated, because of the newness of the products, were based upon production costs, plus Stahlunion's markup. He had never seen or heard of a manufacturer's or exporter's pricelist for these items.

On cross-examination, it was developed that Stahlunion does no manufacturing at all but is simply an exporter. The merchandise contained in these shipments was produced by Phoenix Rhein Rohr, the only manufacturer with which North American E. B. & Co. deals, albeit through Stahlunion. Further, that whatever the inter-relation of the two companies, Stahlunion buys from Phoenix for resale to

importers.[2] Stahlunion is free to buy from other mills and Phoenix sells to any exporter. The witness repeated his opinion that no price-list existed for this merchandise at the time of purchase. He stated that an American pricelist, referred to as a "J" list, was used by his firm to indicate what items he could sell here, but was not used for the price schedule it contained.

The only evidence introduced by the Government in this case was the testimony of Mr. Philip Grossman, the New York customs line examiner for the type of merchandise in issue. Mr. Grossman's testimony concerned a telephone call he had made to Stahlunion in New York on July 19, 1963, the substance of which purported to show that, during 1957 and 1958, that company used a pricelist in selling its welded fittings. Timely objection was made by plaintiff, and it moved to strike the entire testimony as hearsay evidence. The action was taken under advisement, pending defendant's showing a legal basis for its admission. However, in its brief, defendant has indicated that, based on its view of the case, it is now unnecessary to offer legal support for the admission of Mr. Grossman's testimony. Therefore, having failed to meet the condition staying the court's action on plaintiff's motion to strike, the motion is granted, and the testimony of Mr. Grossman is stricken from the record. This action is especially warranted in this instance where the infirmities of this type of evidence are many and where the requirements for the proper foundation conditioning its admission are strict, as was pointed out by plaintiff's brief, pages 5–6, citing Richardson on Evidence, 7th edition.

As heretofore set forth, the parties are in agreement as to the basis of appraisement, namely, export value, as defined in section 402(d), *supra*, but disagree as to dutiable amounts. In this situation, plaintiff is charged with the twofold burden of not only showing the appraised amounts to be in error, but, also, of establishing the amounts contended for. To this end, plaintiff introduced into evidence collective exhibit 1. The affiant therein, the sales manager for Stahlunion's Fittings Department, appears to be a man of considerable experience, having sold German steel products since 1930. Through his position with his company, he deals with the German mills producing steel products for the American market. Based on his necessarily close contacts with the general selling practices of his industry, affiant's unqualified statement that he has not used, seen, or even heard of a pricelist in Germany for the commodities involved must be given great weight. Other facts in the record indicating the relative newness of this field of production, together with plaintiff's witness Banzhaf's personal experience, tend

---

[2] Special customs invoice statements list Stahlunion as "seller."

to corroborate affiant's negation of a pricelist for these products during the pertinent periods of exportation. Plaintiff's proof on this point remains unrebutted.

However, while the defendant has remained silent on this point, it is well settled that, in reappraisement proceedings, the Government need not prove the appraised values were proper, unless or until the plaintiff has affirmatively established another dutiable value. *Kenneth Kittleson* v. *United States*, 40 CCPA 85, 89, C.A.D. 502. By the same token, the quantum of proof necessary to negate an assumed state of facts can be less than that needed to establish a state of facts. *United States* v. *North American Asbestos Corp.*, 48 CCPA 153, C.A.D. 783.

Plaintiff takes the position that the affidavit testimony of Mr. Kirdorf contains sufficient competent evidence to establish that, during the period in question, the freely offered prices for export of this merchandise were the unit invoice prices to North America E. B. & Co., plus the 5 percent favored discount. It cites as authority the decision in *Luria Steel & Trading Corp.*, *Kurt Orban & Co.*, *F. J. Cazalas et al.* v. *United States*, 42 Cust. Ct. 480, Reap. Dec. 9311, wherein the court held that statements in an affidavit such as "the price does not vary with the quantities sold" and "no restrictions accompanied his sales," are not statements of ultimate fact but are themselves evidentiary facts, probative of what they contend, if not contradicted by other evidence.

In *United States* v. *National Carloading Corp.*, 46 Cust. Ct. 745, A.R.D. 125, the appellate division followed this view of the law on the probative value of certain affidavit evidence it had before it and cited the *Luria Steel* case, *supra*, with approval. In both these cases, the sufficiency of the offered evidence was sustained, based primarily on the personal knowledge of the affiant with respect to his firm's freely offered price without the introduction of sales data for corroboration.

On the other hand, the defendant argues, citing another line of cases, for example, *Morris Friedman* v. *United States*, 52 Cust. Ct. 660, A.R.D. 178, and *United States* v. *Kurt Orban Company, Inc.*, 44 Cust. Ct. 759, A.R.D. 116, that the absence of sales data respecting Stahlunion's dealings with its other American buyers renders plaintiff's affidavit evidence conclusory in nature on the issue of the freely offered price to all purchasers.

While each so-called line of cases may contain factual situations that tailor their holdings, as for instance, the sales records of the seller were destroyed and unavailable in the *Luria Steel* case, *supra*, nevertheless, there appears to be a difference in stress placed upon the necessity for furnishing sales information or other factual data concerning the establishment of a value other than the presumed appraised value. Whether certain statements are conclusory or evidentiary can

oftentimes become semantical in application, as noted by the appellate court in *Kobe Import Co.* v. *United States*, 43 CCPA 136, C.A.D. 620.

However, in each case, the weight to be given evidence received in an effort to put forth a *prima facie* case is for the trial court to determine. *Cf. Veolay, Inc., J. E. Bernard & Co., Inc.* v. *United States*, 23 CCPA 101, T.D. 47766; *Golding Bros. Co., Inc.* v. *United States*, 22 CCPA 590, T.D. 47585.

In the instant situation, the sum total of the evidence offered by plaintiff to establish its claimed export values was the affidavit of the seller swearing to the correctness of the claimed amounts. Plaintiff's trial witness was evidently in no position to corroborate Mr. Kirdorf's statements as to the freely offered prices of these items, since he expressed no familiarity with his fellow American buyers or the prices at which they bought. On these facts, it would seem that some sales data, if only a sampling, recording dates, prices, and buyers, would contain the best evidence of the disputed issue. Where sufficiency is concerned, the best available evidence is always a consideration. *Cf. C. J. Tower & Sons* v. *United States*, 44 Cust. Ct. 532, 537, Reap. Dec. 9579.

Be that as it may, plaintiff's proofs are totally deficient in another important respect, as indicated by the defendant in its brief. On at least two occasions in his testimony, the importer stated that Stahlunion was not the exclusive exporter of the instant merchandise manufactured by Phoenix Rhein Rohr. We, therefore, have the situation where the seller of the involved merchandise is but one of several dealers. Its dealings and price offerings are not the sum total of the market. Outside of acknowledging their existence, the record is silent as to the transactions of these other dealers. The affidavit itself speaks only of Stahlunion's sales. Under these conditions, the courts have regularly found that the absence of concrete evidence with respect to the transactions of other dealers in the same merchandise is fatal to plaintiff's attempt to establish the freely offered price. *Cf. Romana Fashions, Inc.* v. *United States*, 49 Cust. Ct. 447, Reap. Dec. 10371; *S. H. Kress & Co. et al.* v. *United States*, 45 Cust. Ct. 566, Reap. Dec. 9853; *Majestic Shipping & Forwarding Co. et al.* v. *United States*, 40 Cust. Ct. 835, Reap. Dec. 9157; *I. Arditi* v. *United States*, 38 Cust. Ct. 749, A.R.D. 75; and *United States* v. *W. Wrightson*, 6 Cust. Ct. 764, Reap. Dec. 5108.

Moreover, the testimony indicates that Stahlunion purchases from other manufacturers as well. Mr. Kirdorf, in his affidavit, states that his firm deals with various German mills. At page 3 of plaintiff's collective exhibit 1, the affiant says:

That instead the prices at which my firm offered bends and welding fittings of ASA and ASTM standards to American importers were arrived at based on the

production cost to the *mills* for each item plus our standard mark-up. * * *
[Emphasis added.]

While the importer testified that it would only buy items produced by Phoenix Rhein Rohr, the evidence would indicate that Stahlunion's other American buyers were receiving the various welded fittings produced by a number of German mills. Therefore, it appears that the claimed values of the importer are not limited to the export prices for the merchandise as produced by the Phoenix mill, but include the prices for similar merchandise produced by other mills. Where Phoenix sells to a number of exporters, the other mills may also and thereby increase the base of the export market. The deficiency of plaintiff's proof would then be compounded.

Based on the foregoing, I find the facts to be:

1. That the merchandise in entries DE 22390, DE 29374, DE 9244, DE 11161, and DE 22368 consists of certain metal welding fittings, exported by Stahlunion-Export GMBH from West Germany during 1957.

2. That such merchandise was appraised in accordance with section 402(d), Tariff Act of 1930.

3. That, during the period in question, such or similar merchandise was not freely offered for sale to all purchasers for consumption in West Germany.

4. That, during the period in question, such merchandise was freely offered for sale to all purchasers, in the principal markets of West Germany, in the ordinary course of trade and in the usual wholesale quantities, for exportation to the United States at prices represented by the appraised values, except for those items in entries DE 22390, DE 9244, and DE 22368, appraised at a unit value of $2.91 per 100 pieces, less standard discounts, which items should have been appraised at a unit value of $2.32 per 100 pieces, less the discounts stated in the appraisements.

5. That the merchandise in entries DE 25568 and DE 27948 consists of flanges, exported by Stahlunion-Export GMBH from West Germany during January and February 1958.

6. That, during the period in question, such merchandise was freely offered for sale to all purchasers for exportation to the United States, in the principal markets, in the ordinary course of trade, and in the usual wholesale quantities, at prices represented by the appraised values, except for the following items, the prices for which are as follows:

(Entry No. DE 25568)

| Stahlunion invoice | Page No. | Item No. | Size in inches | Price |
|---|---|---|---|---|
| XI/1164 | 2 | 10 | 1 | $172.00 less 10% |
| (11/30/57) | | 11 | 3 | 715.00 " " |
| | | 12 | 4 | 1,085.00 " " |
| | | 16 | 24 | 8,900.00 less 7½% & 10% |
| | | 21 | 6 | 1,250.10 " " " " |
| | | 22 | 8 | 1,901.10 " " " " |
| | | 23 | 10 | 2,848.80 " " " " |
| | | 24 | 6 | 1,320.00 " " " " |
| | | 25 | 8 | 2,050.00 less 10% |
| | | 26 | 10 | 3,640.00 " " |
| | | 27 | 12 | 4,875.00 " " |
| | | 28 | 3 | 530.00 " " |
| | | 29 | 3 | 1,815.00 " " |
| | | 30 | 4 | 2,657.00 " " |
| | 3 | 34 | 4 | 530.00 " " |
| | | 35 | 6 | 950.00 " " |
| | | 36 | 8 | 1,480.00 " " |
| | | 37 | 4 | 663.00 " " |
| | | 38 | 6 | 1,390.00 less 7½% & 10% |
| | | 39 | 2 | 154.70 " " " " |

(Entry No. DE 27948)

| Stahlunion invoice | Page No. | Item No. | Size in inches | Price |
|---|---|---|---|---|
| XII/888 | 1 | 3 | 24 | $6,360.00 less 7½% & 10% |
| (12/31/57) | | 4 | 4 | 588.00 less 10% |
| | | 5 | 6 | 1,750.00 " " |
| | 2 | 8 | ½ | 141.00 " " |
| | | 9 .. | ¾ | 157.00 " " |
| | | 10 | ½ | 171.60 " " |
| | | 11 | ¾ | 187.60 " " |
| | | 12 | 8 | 3,380.00 " " |
| | | 13 | 10 | 5,330.00 " " |
| | | 14 | 2 | 527.20 " " |
| | | 15 | 6 | 3,675.00 " " |
| XII/925 | 2 | 10 | 2½ | 316.00 " " |
| (12/31/57) | | 11 | 12 | 5,497.00 " " |
| | | 12 | 1½ | 300.00 " " |
| | | 13 | 2 | 466.00 " " |
| | | 14 | 4 | 840.00 " " |
| | | 15 | 8 | 3,380.00 " " |
| | | 16 | 6 | 2,114.30 " " |
| XII/907 | 1 | 6 | 24 | 6,360.00 less 7½% & 10% |
| (12/31/57) | | 12 | 6 | 1,030.00 less 10% |
| | 2 | 13 | 1 | 188.00 " " |
| | | 14 | 1½ | 345.90 " " |
| | | 15 | 3 | 616.70 " " |
| | | 16 | 1 | 439.50 " " |

| Stahlunion invoice | Page No. | Item No. | Size in inches | | Price |
|---|---|---|---|---|---|
| XII/926 | 2 | 9 | 8 | 1,785.00 | less 10% |
| (12/31/57) | | 16 | 10 | 3,640.00 | " " |
| | | 17 | 4 | 962.40 | " " |
| | | 18 | 3 | 1,106.00 | " " |
| | | 19 | 4 | 1,673.00 | " " |
| | | 20 | 3 | 1,901.70 | " " |
| | | 21 | 4 | 2,779.40 | " " |

7. That, during the pertinent period, such or similar merchandise was not freely offered for consumption in West Germany at prices higher than as set forth in the finding of fact 6.

8. That, except as noted in findings of fact 4 and 6, the evidence in this case is insufficient to establish the values claimed by plaintiff.

I, therefore, conclude as a matter of law:

1. That export value, as defined in section 402(d), Tariff Act of 1930, is the proper basis for appraisement for the merchandise involved.

2. That plaintiff has failed to sustain its burden of proof.

3. That the proper values for the welding fittings involved herein are the appraised values, except as noted in finding of fact number 4, *supra.*

4. That the proper values for the flanges involved herein are the appraised values, except for those noted in finding of fact number 6, *supra*, and as there set forth.

Judgment will be rendered accordingly.