(R.D. 11700)

AMERICAN HYDROLAN CORP.
AMERICAN LANOLIN CORP.
} *v.* UNITED STATES

Entry Nos. 560315; 545703.

(Decided May 7, 1970)

*James G. McGoldrick* for the plaintiffs.

*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader* and *Frederick L. Ikenson*, trial attorneys), for the defendant.

WATSON, Judge: These appeals for reappraisement involve certain cosmetic raw material known as Lanocerina, exported from Italy in

April and May of 1964. American Hydrolan Corp. is the present name of the concern formerly known as American Lanolin Corp. It was stipulated between the parties that the correct basis for valuation is export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. It was further stipulated that the merchandise does not appear on the "Final List" published in T.D. 54521 covering articles required to be appraised under section 402a of the Tariff Act of 1930, as amended.

The involved merchandise was appraised at $2.40 per kilo. Plaintiffs claim the proper value for appraisement purposes is $2.07 per kilo, less air freight, packed.

The statutes herein involved are as follows:

Section 402(b) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 943:

> (b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 944:

> (f) Definitions.—For the purposes of this section—
> (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
>> (A) to all purchasers at wholesale, or
>> (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,
>
> without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.
> (2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of

the same class or kind as the merchandise undergoing appraisement.

\*      \*      \*      \*      \*      \*      \*

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or constructed value, as the case may be, can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise undergoing appraisement.

Plaintiffs called one witness. There was further introduced in evidence certain documents offered by the plaintiffs (collective exhibit 1, exhibit 2, and collective exhibit 3).

Collective exhibit 1 consists of three documents:

(1) A "Request for Information" dated July 22, 1964 from the customs examiner to American Lanolin Corp. requesting certain information relative to a shipment made on February 19, 1964 of Lanocerina from the named corporation from the exporter, Esperis, and specifically requesting an explanation of a listed price of $2.40 per kilo on an invoice covering said shipment.

(2) A letter dated August 4, 1964 to the customs examiner in response to the requested information. Said letter states:

\* \* \* we enclose our order to Esperis, S.A. covering this merchandise and a letter from them showing a recent price increase to $2.40 per kilo. \* \* \*

(3) A page of a letter dated June 12, 1964 from the exporter to the importer herein advising the latter of a price increase on the sale of Lanocerina and advising the plaintiffs herein of the exporter's intention to sell Lanocerina to another American purchaser, "Chesebrough Ponds." The document states in part as follows:

PRICE LANOCERINA: Waiting for the new contract, we have to advise you that beginning next week we shall have to begin to charge you the new price on Lanocerina, just as we charing [sic] Ponds. As it stands today, the added cost of the night shifts, lanolin that continues to rise in price, etc. we simply cannot grant the old price any longer.

The price then would be for all U.S. sales Lit. 1600, or $2.60 per kilo. This price will be charged for all direct sales made, and to you as well. You will have a commission of $.20 per kilo \* \* \*.

Therefore, the price that you will actually pay is $2.40 per kilo, F.O.B. Genoa, net commission.

These new prices cancel all our former letters and information on new prices and old prices, and will be used from now on in all new shipments.

Exhibit 2 is a copy of a contract between American Lanolin Corp. and the exporter herein in which the latter granted to said corporation the exclusive rights for the sale in the United States of among other products, cosmetic raw materials. A copy of a letter dated February 2, 1962 relative to said contract states as follows:

This agreement will remain in force and effect for a period of five years and will automatically continue thereafter for an indeterminate period unless either party terminates by written notice to the other party given at least six months before the end of the five year contract term. At the end of the five year term either party may terminate by six months' written notice to the other party. The term hereof will commence on January 1, 1962.

Collective exhibit 3 is a price list of the exporter dated January 29, 1959. Plaintiffs' witness testified that he relied upon that document during the period April and May 1964, namely, the dates of exportation of the involved merchandise.

Plaintiffs' witness, Mr. Bradford Boynton, president of American Hydrolan Corp. (hereinafter referred to as "American") successor to the American Lanolin Corp. testified that he alone handled all the transactions involved with the foreign seller, Esperis, S.A.

The first contract entered into between plaintiffs and the exporter began in 1957 and ran for a period of five years. Under the terms of this contract, plaintiffs purchased the cosmetic raw material "Lanocerina" at a price of $2.07 per kilo. His company was granted an exclusive dealership in the United States, and while Esperis had the right to set prices, three months notice had to be given before said increases would be effective.

In 1962 American and Esperis renewed their agreement for a second five-year period. The price of Lanocerina continued at $2.07 per kilo and remained at that price through May of 1964.

In a letter dated June 12, 1964 (see above) American was notified by Esperis of an increase in the price of Lanocerina to $2.40 per kilo effective immediately and that Esperis had sold such merchandise to another concern at a price of $2.60 per kilo and would return to American $0.20 per kilo as a commission.

In September 1964, Esperis acknowledged that it had breached its contract with American and agreed to reimburse it for loss of profits since plaintiffs were selling the merchandise for $3.80 per kilo on the open market. The 1962 contract was retained in full force and effect.

In return, plaintiffs agreed to purchase Lanocerina at $2.40 per kilo

and then $2.59 per kilo when Esperis raised its price in September of 1964.

At no time during the period from January 1962 through September 1964 did Esperis charge a price which differed with the quantities ordered, nor did it restrict plaintiffs' use or disposition of the merchandise. The price was always on a per kilo basis.

While the price of the merchandise included the cost of packing, sometimes during the period from 1957 to 1961 plaintiffs were required to assume the cost of insurance and freight on the material.

On cross-examination, Mr. Boynton testified that the typewritten unit price on the customs invoice in reappraisement R65/6877, is $2.40 per kilogram, free Milan, and then stated "All I can tell you the price we paid on the bill is $2.07" (R.43-44). He stated that to his knowledge Revlon, a domestic user, did not purchase Lanocerina from Esperis but that Revlon bought it "through" his company during the period in question. In this connection, the witness testified that "We got the orders from Revlon, and some were shipped directly from Esperis to Revlon, and we did the billing." (R.48.)

The value found by the appraiser shall be presumed to be the value of the merchandise, and the burden rests upon the party who challenges its correctness to prove otherwise. (Section 2633 of Title 28 of the United States Code.) To sustain its burden of proof, and overcome the statutory presumption, it is incumbent upon the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, the party must meet every material issue involved in the case, and if he fails to do so the value found by the appraiser remains in full force and effect. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495 (1952).

An essential statutory element of claimed export value that must be established by a party in a reappraisement proceeding is the price at which the merchandise is "freely sold." "Freely sold," as defined by section 402(f)(1), *supra*, means "sold * * * (A) to all purchasers at wholesale, or (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise * * *." With respect to sales to selected purchasers, section 402(f)(1)(B), *supra*, contemplates sales which are restricted to one or more selected purchasers and wherein there is an absence of sales or offers of sale to *all* purchasers at wholesale. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846 (1964). As to whether the plaintiffs were "selected purchasers" at wholesale within the meaning of the statute, the contract between the parties (plaintiffs' exhibit 2) states in part as follows:

With this Agreement Esperis hereby grants to American the exclusive concessions and rights for the sale in the United States of America of * * * Cosmetic Raw Materials * * *.

However, Esperis' letter to plaintiffs, dated June 12, 1964, collective exhibit 1, page 2, states as follows:

Waiting for the new contract, we have to advise you that beginning next week we shall have to begin to charge you the new price on Lanocerina, just as we [sic] charing [sic] Ponds.

From the latter phrase, it is not clear or certain whether the manufacturer of the involved merchandise "will be" charging Ponds, another American purchaser, or has been charging the latter $2.40 (or $2.60) per kilo during the months of April and May 1964, the respective months of the importations under consideration. Accordingly, the burden is imposed upon the plaintiffs to prove that no such sales had, in fact, been made to Ponds. The fact that no sale came to the attention of plaintiffs' witness is not conclusive that no such sale was ever made. Further, it appears that on one of the customs invoices herein, the "Current Unit Price for Export to United States" was listed as $2.40 per kilo. The reluctance of the manufacturer to comply with the contract terms between it and plaintiff corporation, together with the lack of adequate explanation for the $2.40 per kilo price listed on the invoice, negatives, in my opinion, the claimed value as the proper one for appraisement purposes.

In my opinion, plaintiffs have failed in their burden of establishing that $2.07 less air freight, packed, was the price at which the involved merchandise was freely sold to *all* purchasers at wholesale on the respective dates of exportation.

As heretofore indicated, export value (section 402(b)) of the Tariff Act of 1930, *supra*, stipulated as the correct basis of valuation purposes, is "the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold * * *."

Plaintiffs' witness testified that he knew of another producer in Milan of this Lanocerina, or similar products, named Sadaf. He stated that Sadaf's factory and selling office are in the same Milan area as the factory and selling office of the exporter herein but that he did not know whether Sadaf was willing to sell Lanocerina for exportation to the United States as he had no direct dealings with them. However, in support of their claimed values, plaintiffs have the burden of establishing the price at which identical merchandise, if any, produced in the country of exportation by a manufacturer other than the exporter herein, is freely sold.

In *Castelazo & Associates* v. *United States*, 55 Cust. Ct. 708, Reap. Dec. 11112 (1965), affirmed 59 Cust. Ct. 825, A.R.D. 227 (1967), the

exporter and the manufacturer were two different companies. The record therein disclosed the existence of other exporters or dealers of the same merchandise (made by the same manufacturer) but there was nothing in the record to indicate the prices at which the merchandise there involved was offered or sold by the other exporters. In the *Castelazo* case, *supra*, the court, page 713, stated:

> * * * plaintiff's proofs are totally deficient in another important respect, as indicated by the defendant in its brief. On at least two occasions in his testimony, the importer stated that Stahlunion was not the exclusive exporter of the instant merchandise manufactured by Phoenix Rhein Rohr. We, therefore, have the situation where the seller of the involved merchandise is but one of several dealers. Its dealings and price offerings are not the sum total of the market. Outside of acknowledging their existence, the record is silent as to the transactions of these other dealers. The affidavit itself speaks only of Stahlunion's sales. Under these conditions, the courts have regularly found that the absence of concrete evidence with respect to the transactions of other dealers in the same merchandise is fatal to plaintiff's attempt to establish the freely offered price. [Cases cited.]

In my opinion, the situation outlined in the *Castelazo* case, *supra*, is analogous to that in the case at bar. The testimony of plaintiffs' witness is to the effect that there was another manufacturer of "this Lanocerina, or similar products." The record fails to disclose whether Sadaf did or did not export Lanocerina to the United States. However, in determining export value of the involved merchandise, the price at which any exportation of Lanocerina or similar product has been sold by Sadaf during April or May 1964, the involved periods of exportation, must be considered. Accordingly, plaintiffs' witness, having testified that in the country of exportation there was another manufacturer of such or similar product as that here in question, plaintiffs must establish that Sadaf did not export Lanocerina to the United States during April and May of 1964, or that if it did, must prove that the price at which Sadaf sold the merchandise was not higher than the value claimed by the plaintiffs, particularly since it appears that Sadaf was selling in the same area that plaintiffs' supplier of Lanocerina produces and sells. Proof to establish the price at which another manufacturer sold identical merchandise is fundamental to support plaintiffs' contention that the claimed value was the price at which merchandise such as or similar to the imported Lanocerina was freely sold.

Even assuming that there were no sales of Lanocerina to purchasers other than the importer herein, plaintiffs must establish that the price at which the involved merchandise was sold "fairly reflects the market value of the merchandise." The matter of proof in this connection has been previously passed upon by this court. In *Brentwood Originals et*

*al.* v. *United States*, 58 Cust. Ct. 575, R.D. 11258 (1967), the court, page 583, stated:

> \* \* \* *In the instant case, there is no showing of any sales, or offers, or prices of such or similar merchandise to any other firm either for export or for home consumption* in Japan, and, *therefore, it cannot be determined on this record that the invoiced price "fairly reflects the market value"* under section 402(f)(1)(B), *supra.* [Emphasis added.]

In the case at bar, the only evidence offered by the plaintiffs to prove that the claimed value "fairly reflects the market value" is a price list (collective exhibit 3), dated January 1959, and the testimony of plaintiffs' witness that the price so listed for Lanocerina, namely, $2.07 per kilo, was the price which plaintiff paid for such merchandise in the period between January 1962 and the time the involved merchandise was imported, namely, April and May of 1964. However, the fact that certain prices were paid over a period of time is not sufficient to establish that the prices so paid fairly reflect the market value of the merchandise. Other circumstances must be shown, whereby the court may determine that such prices, in fact, fairly reflect the market value. *National Carloading Corporation* v. *United States*, 47 Cust. Ct. 419, Reap. Dec. 10055 (1961). In my opinion, the offered price list and the testimony adduced on plaintiffs' behalf, fails to establish that sales of the involved merchandise to the alleged selected purchaser were sales in the ordinary course of trade, made at prices which fairly reflected the market value.

Further, the practices of others engaged in the same class of trade are relevant and material elements in creating a picture of what constitutes the ordinary course of trade in the purchase and sale of the class of merchandise involved in an appraisement proceeding. *Inter-Maritime Fwdg. Co., Inc.* v. *United States*, 51 Cust. Ct. 529, A.R.D. 162 (1963). In my opinion it has not been established that the transactions between the exporter Esperis and the purchaser of the involved merchandise, as indicated by the record herein, were sales in the "ordinary course of trade" (section 402(f)(2) of the Tariff Act of 1930, as amended). In the *Inter-Maritime* case, *supra*, the court, page 536, stated:

> In any event \* \* \* the record is barren of affirmative proof of how other British shippers of men's woolen sweaters conducted their business with American purchasers. Since the ordinary course of trade has not been shown, and there is nothing in the record from which it may reasonably be inferred, no determination of whether sales to the instant importer, admittedly a selected purchaser, were conducted in the ordinary course of trade is possible.

The situation in the case at bar parallels that which obtained in the *Inter-Maritime* case, *supra*. Failure of the plaintiffs to establish that the exporter's dealings with the importer herein were in the ordinary course of trade, persuades me to the conclusion that the plaintiffs have failed to meet the statutory burden imposed (section 402(b), *supra*, and section 402(f)(2), *supra*). Accordingly, I am of the opinion that the presumptively correct values returned by the appraiser have not been overcome.

On the record herein, I find as facts:

1. The involved merchandise consists of a cosmetic product, Lanocerina, exported from Italy in April and May 1964.

2. The merchandise is not scheduled on the Final List (T.D. 54521) promulgated by the Secretary of the Treasury pursuant to the Customs Simplification Act of 1956.

3. The merchandise was appraised at U.S. $2.40 per kilogram on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. Plaintiffs have failed to prove by substantial or competent evidence that, on or about the dates of exportation, such merchandise was freely sold in the principal markets of the country of exportation, in the ordinary course of trade, for exportation to the United States, at $2.07 per kilogram, less air freight, packed, as claimed.

I conclude as matters of law:

1. The correct basis of appraisement of the involved merchandise is export value, as defined in section 402(b) of the Tariff Act of 1930, *supra*.

2. The correct export values of such merchandise are those at which the merchandise was appraised.

Judgment will be rendered accordingly.